**G.B. and N.B., Petitioners;**

**v.**

**ARAPAHOE COUNTY COURT,**
the Honorable Judge Biddle
presiding, Respondent.

No. 94SA339.

Supreme Court of Colorado,
En Banc.

March 6, 1995.

Nilsen & Cohn, P.C., Cheryl L. Redmond–Doyle, Linda F. Cohn, Englewood, for petitioners.

Simmons & Simmons, P.C., James L. Simmons, Nancy N. Simmons, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, we issued a rule directing the respondent Arapahoe County Court (the Colorado county court) to show cause why it should not be prohibited from issuing a restraining order, preventing the petitioner, G.B. (the father), from having contact with his son, C.B., and from removing C.B. from Colorado. Because we find that the Colorado county court was without jurisdiction to issue the restraining order under the Uniform Child Custody Jurisdiction Act (UCCJA), codified in Colorado at sections 14-13-101 to -126, 6B C.R.S. (1987 & 1994 Supp.), and under 28 U.S.C. § 1738A (1988) of the Parental Kidnaping Prevention Act of 1980 (PKPA), we make the rule absolute.

### I.

The father and M.R. (the mother) were married in September 1986, and on February 20, 1988, they had a son, C.B. On February 13, 1992, the mother and father divorced in El Paso, Texas. As part of the divorce decree, the parents were awarded joint custody of C.B., with physical custody in the father. The mother moved to Colorado shortly before the divorce was final, and has resided in Colorado since that time. In June 1992, the father moved with C.B. to Barstow, California.

#### A. The California Proceedings

On July 22, 1993, the father filed a motion with the California Superior Court, in San Bernardino County (the California court), asking the California court to "establish" the Texas divorce decree as a California judgment, and requesting a modification of the custody order placing sole custody in the father, with only supervised visitation by the mother in the father's state of residence. As grounds for the modification, the father claimed that the mother was being uncooperative with the visitation agreement, that upon returning from visitation with his mother on two occasions, C.B. was ill, and that the conduct of the mother, and her current husband, R.R., was detrimental to C.B.

In her response to the order to show cause, the mother did not object to establishing the Texas divorce decree as a California judgment. However, the mother did object to the father's request for modification of custody, and requested the California court to award her sole legal and physical custody. The mother denied the father's allegations, and countered that the father's "sexual deviancy" led her to believe that C.B. may have been abused. The mother also alleged that the father had a drinking problem, that he was vulgar, and that he was emotionally and mentally unstable.

On June 16, 1994, before the California court ruled on the cross-petitions for modification of custody, C.B. went to Colorado for a scheduled visitation with his mother. C.B. was scheduled to return to California to his father on July 27, 1994. When the mother failed to return C.B. to his father's custody, the father initiated proceedings for a temporary restraining order. The California court subsequently issued a temporary restraining order, requiring the immediate return of C.B. to the father in California. The mother was served with the California order on August 8, 1994, but did not return C.B. to the father's custody.

At the end of August and the beginning of September 1994, the California court held a five-day hearing on the cross-motions for modification of custody. Both parties called witnesses to testify.[1] The mother called Lon Kopit, a psychotherapist in private practice in Denver, Colorado, who saw C.B. on at least four occasions starting in early August 1994, at the mother's request. Lon Kopit testified that C.B. exhibited fear and anxiety when the therapy sessions involved discussion about the father, and that he noted no anxiety or tension in C.B.'s responses to his

---

1. The record contains transcripts of portions of testimony from the mother's witnesses. The record does not indicate who testified for the father.

mother. Lon Kopit further testified that, in his opinion, C.B. believed that the father and the father's wife physically and emotionally abused him, and that the mother and the mother's husband did not physically and emotionally abuse him. Finally, Lon Kopit said that he believed that it would be in the best interests of C.B. to reside with the mother, but that it would also be in C.B.'s best interests to have a relationship with the father.

Both the mother and R.R. also testified at the California hearing. R.R. said that he had a good relationship with C.B.[2] He also testified that the father made phone calls to their home in Colorado, and left vulgar messages on the answering machine. During R.R.'s testimony, several tape recordings of the father's messages, and the father's phone conversations with C.B., were admitted into evidence.

The mother testified that the father left demanding, intimidating, and sometimes threatening phone messages on her answering machine, and that C.B. would often appear upset after having phone conversations with his father. The mother told the court that she initiated restraining order proceedings in Colorado against the father because of what she felt was emotional abuse of C.B. in the father's care. She testified that she felt it was in C.B.'s best interests to be in her home, and not the father's home.

The California court orally issued its ruling on the cross-motions for custody modification on September 8, 1994, and on September 23, 1994, the court issued a written order incorporating the terms of its previous ruling. The California court established the Texas divorce decree as a California judgment, and essentially denied both parties' motions for sole custody. The California court did not alter the substance of the original Texas custody order, which provided for physical custody of C.B. in the father and a complex visitation schedule for visitation with the mother. However, the California court did provide a schedule for phone calls between C.B. and his mother and father, and ruled

that neither party was to discuss the case with C.B., and that neither party was to disparage the other party in front of the child. Finally, the California court ordered that C.B. be returned to California no later than five o'clock in the afternoon on September 18, 1994.[3]

### B. The Colorado Proceedings

On June 16, 1994, C.B. visited his mother in Colorado, and was scheduled to return to California on July 27, 1994. During C.B.'s visitation with his mother, C.B. was apparently seen by Dr. Tunnel at Fitzsimmons Army Medical Center, who referred C.B. to a Fitzsimmons social worker. In a letter dated July 25, 1994, which was later submitted to the Colorado county court, the social worker said that C.B. reported being physically disciplined with a belt and slipper by the father and the father's wife. The social worker also said that the mother had furnished a tape recording of a conversation between C.B., the father, and the mother, and that it was apparent from the conversation that C.B. was being subjected to "emotional maltreatment." The social worker recommended that C.B. remain in the mother's custody pending the California court custody determination, and that a restraining order be issued "to ensure stabilization of C.B.'s emotional well being."

On July 25, 1994, two days before C.B. was to leave for California, the mother filed a complaint in the Colorado county court, requesting a restraining order against the father and an order for temporary care and control of C.B., pursuant to the Domestic Abuse Act, §§ 14–4–101 to –105, 6B C.R.S. (1987 & 1994 Supp.). In the complaint, the mother alleged that the father had been emotionally abusive when talking to C.B. on the phone, and that the father and the father's wife had committed acts of violence against C.B. by spanking him with a belt, hands, and shoes.

On the same day the complaint was filed, July 25, 1994, the Colorado county court granted the temporary restraining order, enjoining the father from having any contact

---

2. R.R. and the mother had lived together since August 1992, and were married on March 20, 1993.

3. The California court's other modifications are not relevant to our resolution of this case.

with either the mother or C.B. The restraining order also provided that the mother would have temporary care and control of C.B. until the next hearing.[4] The Colorado county court scheduled a hearing for a permanent restraining order on August 8, 1994.

At the hearing on August 8, 1994, the mother and the father appeared personally, with their respective counsel. The Colorado county court appointed a guardian ad litem for the child, and, without hearing any testimony or taking any evidence, continued the hearing until August 18, 1994. After the hearing, the parties stipulated to continue the hearing from August 18, 1994 to September 16, 1994.

On September 12, 1994, the father filed a motion with the Colorado county court, asking the court to dismiss the restraining order and to allow C.B. to return to California with the father. The father argued that the Colorado county court lacked jurisdiction to issue the restraining order under the UCCJA and the PKPA. Pursuant to section 14–13–108(7), 6B C.R.S. (1987), the father also requested attorney fees and costs for having to defend the lawsuit in the Colorado court.

In response, the mother argued that the UCCJA and the PKPA did not apply to the facts of this case. She asserted that the Colorado county court could properly exercise *parens patriae* jurisdiction to protect C.B. from further abuse.

On September 16, 1994, the Colorado county court held a hearing to decide whether the restraining order against the father should be continued, and to consider the father's motion to dismiss. Both parties were represented by counsel, and the child was represented by the guardian ad litem.[5] At the outset of the hearing, Magistrate Judge Grafton Biddle stated that he had communicated with Judge Larry Allen, the judge handling the California proceedings. Magistrate Biddle explained that Judge Allen told him that Judge Allen had awarded custody to the father, and that he had ordered the child returned to California by September 18, 1994.

After hearing argument from both sides, Magistrate Biddle asserted jurisdiction by continuing the case for a week, in order to give the guardian ad litem a chance to investigate the abuse charges made by the mother. The Magistrate ruled that the jurisdictional provisions of the UCCJA did not apply, because the case involved a restraining order pursuant to the Domestic Abuse Act, and was not therefore a custody case. Magistrate Biddle believed that he retained jurisdiction under the Domestic Abuse Act to issue a restraining order, although he recognized that he was without authority to issue an order for temporary care and control of C.B.[6] At the father's request, the court amended the restraining order to allow the father supervised visitation with C.B., and to allow the father telephone contact with C.B. three times per week.

On September 22, 1994, the father filed a petition for writ of prohibition against the Colorado county court, and on September 27, 1994, we issued a rule to show cause.

## II.

The mother, on behalf of the respondent Colorado county court, argues that the UC-

---

4. Under the Domestic Abuse Act, the court may, as part of the restraining order, award temporary care and control of a minor child "for a period of not more than one hundred twenty days." § 14–4–102(2)(d)(I), 6B C.R.S. (1994 Supp.). Section 14–4–102(2)(d)(III), 6B C.R.S. (1994 Supp.), provides that the standard for an award of temporary care and control "shall be in accordance with section 14–10–124[, 6B C.R.S. (1987)]," which establishes that a court shall determine custody, under the Uniform Dissolution of Marriage Act, according to what is in the child's best interests.

5. The record does not indicate whether the parties themselves were present.

6. During the hearing, Magistrate Biddle orally amended that part of the temporary restraining order which awarded temporary care and control of C.B. to the mother. The record does not reveal whether the amended order was reduced to writing.

Despite the fact that the Colorado county court amended the order, removing the award of temporary care and control, the order, which forbade the father from having any contact with C.B., in effect gave the mother custody of C.B. for the term of the order.

CJA and the PKPA do not apply to the facts of this case because the Colorado county court did not make a "custody determination" under either the UCCJA or the PKPA, but rather entered a temporary restraining order under the Domestic Abuse Act. The mother asserts that since the Colorado county court specifically amended its order, removing any grant of temporary care and control of C.B. to the mother, the provisions of the UCCJA and the PKPA simply do not apply. We disagree.

■ We find that the Colorado county court's restraining order was a "custody determination" within the meaning of both the UCCJA and the PKPA. Furthermore, we find that the UCCJA and the PKPA preclude the Colorado county court from asserting jurisdiction in this case, and that any further proceedings regarding custody of or visitation rights with C.B. must instead be referred to the California court. The UCCJA and the PKPA were meant to prevent the precise situation presented here, in which the mother, dissatisfied with the custody determination in California, wrongfully retained the child in an attempt to secure a more favorable custody determination in Colorado.[7]

### A.

■ The provisions of the UCCJA are implicated whenever the court makes a "custody determination." Under section 14–13–103(2), a custody determination, in relevant part, "means a court decision and court orders and instructions providing for the custody of a child, including visitation rights."

■ The restraining order, despite the fact that it was amended so that it did not expressly provide for the care, control, or custody of C.B., was a custody determination within the meaning of the UCCJA. Under the terms of the restraining order, the father, who had primary residential custody of C.B. under the original custody decree, was prohibited from having any contact with C.B. Even though the Colorado county court later deleted the reference to care and control of C.B., the restraining order necessarily awarded sole and exclusive custody of C.B. to the mother for the duration of the order. Since the restraining order effectively gave custody of C.B. to the mother, to the exclusion of the father, the restraining order was a court order "providing for the custody of a child" under the UCCJA, and the jurisdictional restrictions of the UCCJA apply.[8]

We have recognized that the primary purposes of the UCCJA are to avoid jurisdictional conflicts with other states over child custody issues, to discourage parents from "jurisdictional fishing," and to ensure that the state making the custody decision is the state with the closest connection to the child and the child's family. *L.G. v. People in the Interest of K.G.*, 890 P.2d 647, 656 (Colo. 1995); *Nistico v. District Court*, 791 P.2d 1128, 1130 (Colo.1990). In general, the UCCJA incorporates the principle that only one

7. We note at the outset that, notwithstanding the UCCJA, the Colorado county court did not have jurisdiction to enter the restraining order for the benefit of C.B. under the Domestic Abuse Act. Section 14–4–102(14), 6B C.R.S. (1994 Supp.), provides that "[t]his section [§ 14–4–102 of the Domestic Abuse Act] shall not apply to any claim of domestic abuse against an unemancipated minor. Such claims shall be addressed by the juvenile court pursuant to the 'Colorado Children's Code', title 19, C.R.S." Under §§ 19–3–101 to –703, 8B C.R.S. (1994 Supp.), of the Colorado Children's Code, §§ 19–1–101 to 19–6–106, 8B C.R.S. (1994 Supp.), the *juvenile court* has jurisdiction "in proceedings concerning any adult who abuses, ill-treats, neglects, or abandons a child who comes within the court's jurisdiction under other provisions of this section,"

unless otherwise provided by law. § 19–1–104(2), 8B C.R.S. (1994 Supp.).

Read together, §§ 14–4–102(14) and 19–1–104(2) provide for potential jurisdiction over C.B. in the juvenile court, but not the county court. *See also* § 13–6–105(1)(d), 6A C.R.S. (1987) (providing that the county court shall have no jurisdiction over "[m]atters affecting children, including custody, support, guardianship, adoption, dependency or delinquency").

8. This is consistent with our holding in *L.G. v. People in the Interest of K.G.*, 890 P.2d 647 (Colo. 1995). In *L.G.*, we held that the juvenile court's dispositional order, which altered L.G.'s visitation rights pursuant to a petition in dependency and neglect, was a custody determination within the meaning of the UCCJA, because the UCCJA expressly includes dependency and neglect proceedings within its jurisdictional parameters.

state should exercise jurisdiction over a child custody matter. *L.G.*, 890 P.2d at 656.[9]

■ Under section 14–13–104, 6B C.R.S. (1987),[10] a state will meet the UCCJA's threshold jurisdictional requirement if: the state is the child's "home state,"[11] and one parent continues to live in the state, although the child is not physically present there; or, it is in the best interests of the child that the court assume jurisdiction, because the child and at least one parent have a significant connection with the state; or, the child is physically present in the state, and is in urgent need of protection from mistreatment or abuse. If it appears that no state could exercise jurisdiction under any of the above alternatives, or if a state declines to assert jurisdiction although it could, subsection (1)(d) of section 14–13–104 allows a state to assume jurisdiction, if it is in the best interests of the child to do so.

**9.** The UCCJA was promulgated as a uniform law by the National Conference of Commissioners on Uniform State Laws in 1968, and it has been adopted in every state and the District of Columbia, with slight variations from state to state. *See* Uniform Child Custody Jurisdiction Act, Table of Jurisdictions Wherein Act Has Been Adopted, 9 U.L.A. 20 (1994 Supp.).

**10.** Section 14–13–104, 6B C.R.S. (1987), provides as follows:

**Jurisdiction.** (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

The record indicates that California, and not Colorado, is the appropriate forum under the UCCJA for the determination of C.B.'s custody status. First, California is C.B.'s home state, and his state of permanent residence. He has lived in California since June 1992, and has attended school in California. California is also the permanent residence of the custodial father. Since California is C.B.'s home state and residence, his father's state of residence, and since C.B. has a substantial connection to the state, California could, and did, properly assert jurisdiction over the petitions to modify custody under its UCCJA equivalent to section 14–13–104(1)(b).[12] Because of C.B.'s close ties to California, it was in his best interests to have his custody status determined there.

In contrast, the Colorado county court should not have asserted jurisdiction to issue the restraining order under the UCCJA because it was not in C.B.'s best interests to

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c) of this subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

(2) Except under paragraphs (c) and (d) of subsection (1) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

**11.** Section 14–13–103(5), 6B C.R.S. (1987), provides:

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

**12.** Section 14–13–104(1)(b) is substantively identical to California's version of that jurisdictional section, § 3403(a)(2) of West's Annotated California Family Code (1994).

have his custody status determined in Colorado. C.B. has never lived in Colorado, has not attended school here, and has been present here only during scheduled visitation with the mother. The majority of evidence relating to C.B.'s future care is not in Colorado, but California.

In addition, at the time the mother commenced the action for the restraining order in Colorado, the parties' cross-motions for modification of custody were already pending in California. The UCCJA restricts a state from exercising jurisdiction when a proceeding involving the custody of the child is pending in another state. § 14–13–107, 6B C.R.S. (1987). Section 14–13–107(1) provides as follows:

> **Simultaneous proceedings in other states.** (1) A court of this state *shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state* exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

§ 14–13–107(1), 6B C.R.S. (1987) (emphasis added).

The record shows that the Colorado county court was apprised of the pending California proceedings no later than August 12, 1994. As such, under section 14–13–107, the Colorado county court was required to decline jurisdiction in favor of California, and did not have the authority to issue the restraining order.

Our holding is consistent with the overall goal of the UCCJA, which is to deter non-custodial parents from snatching a child to a new state in an effort to circumvent the child custody jurisdiction of another state. In this case, the mother wrongfully retained C.B. after a period of visitation, when it was clear that California was properly exercising jurisdiction on the petitions to modify custody. Moreover, the mother never objected to California's jurisdiction. When the father filed the motion for modification of custody in California, the mother specifically stated that she had no objection to having their Texas divorce decree established as a California judgment, and filed her own motion for sole custody with the California court. Since the mother submitted to California's jurisdiction, she cannot now complain about the California custody decree.[13]

Our holding is also consistent with our recent decision in *L.G.* In *L.G.*, we held that Colorado could properly assert jurisdiction in a petition for dependency and neglect under the UCCJA, even though Oklahoma was the state of the original decree. We found, in *L.G.*, that since Oklahoma had not exercised jurisdiction in accordance with the UCCJA, the UCCJA allowed Colorado to alter L.G.'s visitation rights pursuant to a petition in dependency and neglect. *Id.*, 890 P.2d at 659. Central to our analysis in that case was the fact that Colorado was the child's state of residence, and the state with the most significant contact with the child. In addition, the custodial parent was a resident of Colorado. *Id.*, 890 P.2d at 658.

Here, in contrast, California is the child's home state, and his state of residence, and the state with the maximum amount of evi-

**13.** We reject the mother's argument that the Colorado county court had jurisdiction to enter the restraining order under the "emergency" provision of the UCCJA, § 14–13–104(1)(c), 6B C.R.S. (1987). We held in *Brock v. District Court*, 620 P.2d 11, 14–15 (Colo.1980), that emergency jurisdiction under § 14–13–104(1)(c) of the UCCJA is "limited to those cases where there is *substantial evidence of a grave emergency affecting the immediate welfare* of the child." *Id.* at 14 (emphasis added); *see also L.G.*, 890 P.2d at 653 n. 10.

After a review of the record, we are persuaded that the mother had the opportunity in the California hearing to establish her allegations of abuse of C.B. The California court heard five days of testimony on the mother's abuse allegations, including the mother's testimony, her husband's testimony, and the testimony of the psychologist who examined C.B. in Colorado, Lon Kopit. The fact that the California court continued physical custody of C.B. in the father indicates that the court did not find merit in the mother's allegations. The California court is equally, if not better, suited to litigate the abuse allegations. Based on the California court's decision, and our review of the record, it would appear that C.B. is not susceptible to imminent harm if he is returned to his father's custody in California.

dence concerning C.B.'s future care. California is also the residence of the custodial parent, the father. Unlike the situation in *L.G.*, California has exercised jurisdiction in accordance with the UCCJA, and since it has, the UCCJA requires Colorado to defer to California's jurisdiction.

In addition to our holding in *L.G.* that the UCCJA vested Colorado with jurisdiction, we concluded that the dependency and neglect provisions of the Children's Code were enacted to allow the State to act in the best interests of the child, by protecting the child from abuse or neglect. *Id.*, slip. op. at 20, 890 P.2d at 655. We said that, when the State acts on a petition in dependency and neglect, the policies behind the UCCJA have little application since the UCCJA was intended to deter parties *seeking to avoid a valid custody decree from another state* from kidnapping their children to other jurisdictions. *Id.*, 890 P.2d at 656.

This case is exactly the type of case to which the UCCJA was intended to apply. The mother wrongfully refused to return C.B. after a period of visitation, and then the mother, and not the State, initiated proceedings in Colorado which were designed to change custody of C.B. in the mother's favor. We realize that the mother alleges that her actions were necessary to protect C.B. from abuse. However, if we were to allow Colorado to assert jurisdiction as soon as the parties allege abuse, it would permit the parties to circumvent the requirements of and the policies behind the UCCJA. Additionally, the mother has had a chance to present her abuse allegations before the California court. If the California court had found merit in the mother's allegations, it presumably would not have continued custody with the father.

### B.

We also find that the PKPA, like the UCCJA, applies to the facts of this case, and bars the Colorado county court from assert-

ing jurisdiction to issue the restraining order. Similar to the UCCJA, the PKPA limits the jurisdiction of courts in child custody matters.

Under 28 U.S.C. § 1738A(a) (1988), the PKPA requires a state to enforce the "custody determination" of another state, as long as the determination was made in accordance with the provisions of the PKPA.[14] A "custody determination" is defined as "a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C. § 1738A(b)(3) (1988).

■ The restraining order issued by the Colorado county court was a custody determination within the meaning of the PKPA, because it necessarily granted exclusive custody of C.B. to the mother for the term of the order. Since the provisions of the PKPA are applicable, 28 U.S.C. § 1738A(g) (1988) precludes Colorado from taking jurisdiction. That section provides as follows:

A court of a State *shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State* where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

(Emphasis added.) Under section 1738A(g), then, Colorado could not assert jurisdiction as long as California proceedings were pending, and as long as California was exercising jurisdiction in conformity with the PKPA.

Although the California court's jurisdictional basis is not part of the record, it is clear that California could properly assert jurisdiction under 28 U.S.C. § 1738A(c)(2)(B) (1988) of the PKPA, which provides for jurisdiction in the state if it is in the child's best interests, and if the child has a significant connection with the state.[15] As we concluded

---

**14.** The PKPA provides as follows:

The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a).

**15.** The PKPA provides:

in our analysis under the UCCJA, C.B.'s connection to California was significant. Therefore, once the Colorado county court was apprised of the pending proceedings in California, it should have immediately referred the matter to California.

### III.

We hold that the Colorado county court had no jurisdiction under the UCCJA and the PKPA to enter the restraining order preventing the father from having contact with C.B., and that the Colorado county court was instead required to defer to the jurisdiction of California on matters involving custody of or visitation with C.B. Accordingly, the rule is made absolute.

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
....
(2) one of the following conditions is met:
....
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]
28 U.S.C. § 1738A(c)(2)(B).