664 S.E.2d 743

**In re the Marriage of Kathleen R. ROSEN, Appellant,**

v.

**David A. ROSEN, Appellee.**

**No. 33437.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 2008.

Decided June 26, 2008.

---

Ward D. Stone, Jr., Edward L. Harman, Jr., Spilman Thomas & Battle, PLLC, Morgantown, WV, for Appellant.

Michelle Widmer–Eby, Widmer–Eby & Associates Morgantown, WV, for Appellee.

BENJAMIN, Justice.

The instant action is before this Court upon the appeal of Kathleen Rosen from an October 24, 2006, order entered by the Circuit Court of Monongalia County denying her petition for appeal. The matter came before the circuit court upon Kathleen Rosen's appeal from an August 9, 2006, Order Retaining Jurisdiction Over Child Custody entered by the Family Court of Monongalia County. The circuit court affirmed the ruling of the family court retaining West Virginia jurisdiction over the child custody matters at issue between the parties. Herein, the Appellant alleges that the lower courts erred in retaining jurisdiction and that Ohio is the most convenient forum in which to adjudicate

these issues. This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons expressed below, the October 24, 2006, order of the Circuit Court of Monongalia County is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties married on December 1, 1979. Four children were born of the marriage.[1] The family moved to Morgantown, West Virginia in May 1992, and resided there until December 1, 2005, at which time Kathleen Rosen [hereinafter "the Appellant"] left the marital home and moved with their minor twins to Cuyahoga County, Ohio.[2] Four months later, on April 6, 2006, the Appellant filed for separation in the Court of Common Pleas, Division of Domestic Relations, Cuyahoga County, Ohio, action number 06–309951 [hereinafter referred to as the "Ohio common pleas court"].[3] David Rosen [hereinafter "the Appellee"] filed for divorce in the Family Court of Monongalia County, West Virginia, action number 06–D–164, on April 27, 2006.

On May 6, 2006, the Monongalia County Family Court set a hearing pursuant West Virginia Code § 48–20–107 to hear arguments from the parties regarding jurisdictional issues regarding child custody.[4] Thereafter, the Appellee filed a Motion to Dismiss the Ohio common pleas court proceedings on May 12, 2006. Four days later, the Appellant filed a Motion to Exercise Jurisdiction Over the Child Custody Issues in the Ohio common pleas court. She then filed a Motion to Dismiss the West Virginia proceedings on May 22, 2006. The parties appeared before the Monongalia County Family Court on May 26, 2006, for a jurisdictional hearing. After hearing the arguments of the parties, the family court took the matter under advisement pending communication with the Ohio common pleas court regarding jurisdictional issues.

On June 6, 2006, the Ohio common pleas court entered an order taking jurisdiction with regard to the custody of the three minor children, finding that Ohio was a more convenient forum in which to hear the issue. Although the Ohio common pleas court was aware that proceedings were pending in West Virginia at the same time, the court found that the Appellee had waived jurisdictional rights under the Uniform Child Custody Jurisdiction and Enforcement Act [hereinafter "U.C.C.J.E.A."] by agreeing to the relocation of the Appellant and the minor children in Ohio.

On August 9, 2006, the Monongalia County Family Court entered an Order Retaining Jurisdiction Over Child Custody, concluding that the U.C.C.J.E.A. clearly established West Virginia as the "home state" for the child custody matters in this case. The order retaining jurisdiction concluded that both parties resided together with their children in Monongalia County, West Virginia from 1992, until December 1, 2005, and because both divorce actions were filed in April of 2006, West Virginia is the only home state under the U.C.C.J.E.A. The family court found that before Ohio may exercise jurisdiction over the custody of the children in this case, West Virginia must first decline jurisdiction after making a determination that West Virginia is an inconvenient forum. The court also made the specific finding that the West Virginia court is a more appropriate

---

1. Three of the children are currently minors and thus, the subject of this custody dispute. The eldest child is emancipated.

2. The specific facts surrounding the Appellant's move to Ohio and its significance to the marriage remain in dispute. Particularly, the parties disagree regarding the issue of whether the Appellee approved of the relocation of the Appellant and the twins to Ohio.

3. Upon filing her petition for separation, the Appellant represented to the Ohio common pleas court that she and the three minor children had resided in Ohio for at least six months, when, in fact, they had not.

4. Pursuant to West Virginia Code § 48–20–107 (2001), if a question of existence or exercise of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act is raised in a child custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously.

forum in which to decide custody in this case because information, and the witnesses thereto, reside almost exclusively in Monongalia County, West Virginia, in reference to the care-taking responsibilities performed by the respective parties prior to their separation. The court noted that it had, in good faith, attempted to have direct verbal communication with the Ohio common pleas court regarding jurisdiction to no avail, but that the two courts were able to exchange documents and notes.

On September 7, 2006, the Appellant appealed this order to the Circuit Court of Monongalia County. On October 24, 2006, the Circuit Court entered an order denying the Appellant's Petition for Appeal and affirming the order of the family court. The circuit court found that the family court's analysis of the U.C.C.J.E.A. was not an abuse of discretion, nor was its application of the facts clearly erroneous because West Virginia was the "home state" of the children. It is from that order that the Appellant now appeals.

## II.

### STANDARD OF REVIEW

The critical issue before this Court is whether child custody jurisdiction should be exercised in Ohio or West Virginia. This Court has held that "in reviewing a final order of a circuit judge upon review of, or a refusal to review, a final order of a family court judge we review the findings of fact under a clearly erroneous standard and the application of the law to facts under an abuse of discretion standard. We review questions of law de novo." Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). Additionally, "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." Syl. Pt. 3, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 386, 465 S.E.2d 841 (1995). With these

standards of review in mind, we now turn to the issues before us.

## III.

### DISCUSSION

The Appellant presents three assignments of error. Specifically, the Appellant argues that the circuit court abused its discretion in failing to give the Ohio common pleas court order full faith and credit; that the circuit court abused its discretion in failing to find that Ohio was the most convenient forum under the U.C.C.J.E.A.; and that the circuit court abused its discretion by failing to require the family court judge to have direct communication with the Ohio common pleas court before taking jurisdiction of the case.

To the contrary, the Appellee argues that the lower court did not violate the Full Faith and Credit clause of the United States Constitution because the U.C.C.J.E.A. permitted the court to ignore the order entered by the Ohio common pleas court. Moreover, the Appellee contends that the lower court had jurisdiction pursuant to the definition of the term "home state" under the U.C.C.J.E.A. Finally, the Appellee observes that the U.C.C.J.E.A. does not make communication between the family court and the Ohio common pleas court mandatory. For the reasons discussed below, we affirm the circuit court.

### A.

#### *Full Faith and Credit*

The U.C.C.J.E.A. is a jurisdictional act controlling child custody disputes. Both Ohio and West Virginia have adopted virtually identical versions of the U.C.C.J.E.A.[5] Our Legislature enacted the U.C.C.J.E.A., W. Va.Code § 48–20–101, *et seq.*, effective September 1, 2001. This act replaced the Uniform Child Custody Jurisdiction Act ("U.C.C.J.A."), which had governed jurisdiction over interstate child custody cases in our state since 1981. The U.C.C.J.E.A. changed the prior Act to afford jurisdictional priority to the "home state" in order to eliminate jurisdictional competition between courts re-

5. *See* W. Va.Code § 48–20–101, *et seq.*, and OHIO R.C. § 3127.01, *et seq.*

garding child custody. *See generally Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act,* 100 A.L.R. 5th 1 (2002). West Virginia Code § 48–20–201(a) specifies the four following jurisdictional grounds for a West Virginia court to make an initial determination in a child custody proceeding:

(a) Except as otherwise provided in section 20–204, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subjection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20–207 or 20–208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20–207 or 20–208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

W. Va.Code § 48–20–201(a) (2001).

Pursuant to West Virginia Code § 48–20–102(g) (2001):

"Home state" means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

W.Va.Code § 48–20–102(g).

We find that the circuit court's analysis of the U.C.C.J.E.A., as it applies to the facts in the record herein, was not an abuse of discretion, nor was its application to the facts of the case clearly erroneous. Indeed, the conclusion that West Virginia is the "home state" is easily reached. Thus, any jurisdictional competition is eliminated. The last state in which the children in this matter lived with either parent for a period of six (6) consecutive months immediately prior to the commencement of any child custody proceeding was Monongalia County, West Virginia. The parties resided with their children in West Virginia from 1992 until December 2005. The twins were removed from West Virginia on December 1, 2005 [6], and both the Ohio and the West Virginia initial custody actions were filed in April 2006, less than six months following the departure of the Appellant with the twins to the State of Ohio. Based on this, we find that jurisdiction is appropriate in Monongalia County, West Virginia.

■ Pursuant to the Parental Kidnaping Prevention Act [hereinafter "P.K.P.A."] [7], 28 U.S.C.A. § 1738A (2000), we are not required to recognize and enforce custody determinations of sister states that lack jurisdiction

---

**6.** The couple's second oldest child has never resided in Ohio, but rather, attends boarding school in Connecticut.

**7.** The PKPA is generally applicable to all interstate custody proceedings affecting a prior custo-

dy award by a different state, and like the U.C.C.J.E.A., is specifically designed to create a uniform application of child custody jurisdictional standards.

under the U.C.C.J.E.A. The P.K.P.A. provides, in pertinent part, the following:

> "[t]he appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State . . .
>
> (c) A child custody or visitation determination made by a Court of a State is consistent with the provisions of this section only if—
>
>> (1) such court has jurisdiction under the law of such State; and
>>
>> (2) one of the following conditions is met:
>>
>>> (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant[8] continues to live in such State . . ."

28 U.S.C.A. § 1738A, in part.

 Accordingly, although foreign states' custody decrees should be enforced and recognized by West Virginia courts if they accord with the statutory jurisdictional provisions of the U.C.C.J.E.A. and the P.K.P.A., in child custody matters such as this, where a foreign court lacks jurisdiction under the U.C.C.J.E.A., the full faith and credit doctrine will not be applied.[9]

Because the Ohio common pleas court did not possess subject matter jurisdiction of this case, we find that the circuit court did not commit error in declining to give full faith and credit to the Ohio custody order. The presence of the Appellant and two of the minor children in Ohio for "almost six months" is insufficient to confer home-state jurisdiction on Ohio under the U.C.C.J.E.A., and the Ohio common pleas court should have deferred to the Monongalia County Family Court's decision to retain jurisdiction. Pursuant to West Virginia Code § 48–20–201(a)(2), West Virginia must first decline jurisdiction after making a determination that it is an inconvenient forum before Ohio may exercise jurisdiction over the custody of the children in this case.

 Furthermore, the Appellee did not waive jurisdictional rights to have these child custody issues heard in West Virginia. The record indicates that the Ohio common pleas court found that the Appellee had waived jurisdictional rights under the U.C.C.J.E.A. by agreeing to the location of the Appellant and the minor children in the state of Ohio. This fact remains in dispute between the parties. Regardless, we wish to make it perfectly clear that in West Virginia, subject matter jurisdiction under the U.C.C.J.E.A. cannot be conferred by consent, waiver, or estoppel. The U.C.C.J.E.A. is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes. This holding is consistent with other jurisdictions which have considered this issue. *See,*

---

8. "Home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period. 28 U.S.C.A. § 1738A(b)(4). "Contestant" means a person, including a parent or grandparent, who claims a right to custody or visitation of a child. 28 U.S.C.A. § 1738A(b)(2).

9. Appellant's full faith and credit argument has now essentially been rendered moot. During the pendency of this appeal, the Supreme Court of Ohio issued an opinion, *Rosen v. Celebrezze,* 117 Ohio St.3d 241, 883 N.E.2d 420 (2008), concerning Appellee's appeal from a judgment dismissing his complaint for a writ of prohibition to prevent the Ohio common pleas court judge from proceeding with the issues of child custody and parental rights presented in this case. The Supreme Court of Ohio reversed the judgment of the court of appeals and granted the Appellee's writ, holding that the court of appeals erred in dismissing the complaint and the common pleas court patently and unambiguously lacks subject matter jurisdiction to proceed in the underlying case because, pursuant to the U.C.C.J.E.A., West Virginia is the "home state."

*e.g., Foley v. Foley,* 156 N.C.App. 409, 576 S.E.2d 383, 385 (2003) (holding m a child custody proceeding that subject matter jurisdiction cannot be conferred by consent, waiver or estoppel); *In re A.C.S.,* 157 S.W.3d 9, 15 (Tex.App.2004) (holding that subject matter jurisdiction under the U.C.C.J.E.A. cannot be waived or conferred by agreement); *In Re Marriage of Pritchett,* 80 P.3d 918, 921 (Colo.App.2003) (holding that parent did not waive U.C.C.J.E.A. jurisdictional objection).

### B.

### Inconvenient Forum

■ We also find the Appellant's second assignment of error unconvincing. The lower court did not abuse its discretion in declining to find that Ohio was the most convenient forum under West Virginia Code § 48–20–207(2001). West Virginia Code § 48–20–207 provides, in pertinent part:

(a) A court of this state which has jurisdiction under this chapter to make a child custody determination *may* decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of the party, the court's own motion or request of another court.

(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

W. Va.Code § 48–20–207 (Emphasis added).

■ First, we wish to emphasize that West Virginia Code § 48–20–207 gives the court possessing jurisdiction *permissive discretion* to determine whether or not it wishes to decline to exercise jurisdiction if it determines that it is an inconvenient forum under the circumstances and the court of another state is a more appropriate forum. An elementary principle of statutory construction is that the word "may" is inherently permissive in nature and connotes discretion. *Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher,* 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) (citations omitted).

Because West Virginia is the home state in this action, the family court was under no obligation to even consider whether Ohio was a more appropriate forum. However, the family court, in its discretion, evaluated the factors enunciated under W. Va.Code § 48–20–207(b) and determined that based upon the facts, Ohio was not the most appropriate forum in which to hear the issues presented in this matter. Additionally, the circuit court, in finding that the family court's analysis of the U.C.C.J.E.A. was not an abuse of discretion, was clearly inclined to agree with the family court's analysis of the factors enunciated in West Virginia Code § 48–20–207, also finding that West Virginia is the more appropriate forum to decide custody in this case. Accordingly, we are unwilling to disturb the lower courts' findings on this issue.[10]

**10.** It is worth noting that the record also reflects that the witnesses who will testify regarding pa-

## C.

### Communication Between Courts

 Finally, in regard to the issue of interstate court communication pursuant to West Virginia Code § 48–20–110(a) (2001), we find that the circuit court did not abuse its discretion in declining to require the family court to have direct verbal communication with the Ohio common pleas court before taking jurisdiction of the case. West Virginia Code § 48–20–110(a) provides that "[a] Court of this state *may* communicate with a court in another state concerning a proceeding arising under this chapter." (Emphasis added).

As stated in the order retaining jurisdiction, the family court and the Ohio common pleas court made repeated efforts to verbally communicate with one another in this matter and exchanged documents and notes, but due to the case loads and dockets of the respective courts they were unable to engage in direct verbal communication. While the family court was unable to have direct verbal communication with the Ohio common pleas court prior to retaining jurisdiction, it was in fact able to exchange written documents regarding the case. Because West Virginia Code § 48–20–110, as currently drafted, does not expressly require interstate court communication concerning these types of proceedings, we simply cannot find that the circuit court committed any error in declining to require the family court to have direct verbal communication with the Ohio common pleas court before taking jurisdiction of the case. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. at 626 n. 12, 328 S.E.2d at 500 n. 12 (1985) (citations omitted)(the word "may" is inherently permissive in nature and connotes discretion). "When the language chosen by the Legislature is plain, we apply, rather than construe, such legislative language." *State ex rel. McGraw v. Combs Services*, 206 W.Va. 512, 519, 526 S.E.2d 34, 41 (1999) (citations omitted).

With that said, although communication between courts is not mandated under West Virginia Code § 48–20–110, clearly the Legislature wished to recognize the significant benefit of such communication to hopefully prevent these types of jurisdictional disputes in custody proceedings. We agree. Keeping this in mind, we encourage our family courts and circuit courts to make every reasonable effort to communicate with other state's courts in matters such as this, despite the fact that they are not expressly required to do so in these types of proceedings.

## IV.

### CONCLUSION

For these reasons, the Circuit Court of Monongalia County did not err in finding that the family court's order maintaining jurisdiction should be enforced with respect to child custody issues. Accordingly, the circuit court's October 24, 2006, order denying the Appellant's Petition for Appeal is hereby affirmed.

**Affirmed.**

---

. rental care-taking responsibilities performed by the parties prior to their separation reside almost exclusively in West Virginia. Additionally, the parties two eldest children do not currently reside in Ohio. All of their children resided in West Virginia for the majority of their lives.