# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Danielle Hilling,**
**Petitioner Below, Petitioner**

**vs.)   No. 17-0403** (Monongalia County 14-C-589)

**J.D. Sallaz, Acting Warden,**
**Lakin Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Danielle Hilling, by counsel Teresa J. Lyons, appeals the March 28, 2017, order of the Circuit Court of Monongalia County denying her petition for post-conviction habeas corpus relief. Respondent J.D. Sallaz, Acting Warden, Lakin Correctional Center, by counsel, Sarah B. Massey, filed a response in support of the circuit court's order.[1] Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in finding that an omnibus hearing was unnecessary, in denying petitioner's motion to expand the record, and in denying habeas relief.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2006, petitioner was indicted for one count of first-degree murder and one count of conspiracy. At trial, petitioner was convicted of both counts. Ultimately, petitioner was sentenced to life without the possibility of parole for first degree murder and one to five years of incarceration for conspiracy, said sentences to be served concurrently. Petitioner appealed her conviction. The Court refused the appeal by order entered in May of 2008.

In June of 2009, petitioner, by previous counsel, filed a petition for writ of habeas corpus. The circuit court summarily denied those claims without an omnibus evidentiary hearing.

---

[1]Petitioner originally listed Lori Nohe as respondent to this action. However, J.D. Sallaz is now the acting warden at the facility in question. Accordingly, the proper public officer has been substituted pursuant to Rule 41(c) of the Rules of Appellate Procedure.

1

Petitioner appealed the denial, and this Court affirmed the circuit court order. *Hilling v. Nohe*, No. 12-0131, 2013 WL 3185089 (W.Va. June 24, 2013)(memorandum decision).

Thereafter, petitioner filed a second petition for writ of habeas corpus in the Circuit Court of Monongalia County asserting ineffective assistance of trial counsel. Counsel was appointed for petitioner who filed an amended petition and a supporting memorandum of law. Respondent filed an answer. In a thirteen-page order entered on March 28, 2017, the circuit court denied the petition without holding an omnibus hearing. The circuit court found that "[p]etitioner has not shown that trial counsel's performance was so deficient under an objective standard of reasonableness that she was denied the effective assistance of counsel." Further, the circuit court found that "[p]etitioner has not shown that but for trial counsel's actions and/or omissions, the result of her trial and sentencing would have been different." In regard to an omnibus hearing, the court found that petitioner "has not disclosed an expert opinion or indicated that any expert or other testimony would be taken at a hearing" and that "petitioner has not identified any evidence she wishes to introduce in support of her [p]etition." Petitioner now appeals that order.

We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016).

On appeal, petitioner argues that the circuit court abused its discretion by dismissing her amended petition without affording her an omnibus hearing or another opportunity to expand the record. Respondent argues that petitioner had no entitlement to expand the record and that the circuit court may deny habeas petitions that are procedurally barred or meritless. We agree with respondent and find no error in the circuit court's denial of petitioner's habeas petition.

West Virginia Code § 53-4A-7(a) provides

> [i]f the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence . . . show to the satisfaction of the court that the petition is entitled to no relief . . . the court shall enter an order denying the relief sought.

Additionally, we have previously held as follows:

> 'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing

2

counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief. Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).' Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004).

*Anstey*, 237 W.Va. at 412, 787 S.E.2d at 866, Syl. Pt. 3. The circuit court carefully reviewed and analyzed petitioner's memorandum of law in support of her amended petition, which provided a detailed presentation of her argument and included relevant transcripts as exhibits for the circuit court's consideration. Additionally, the judge presiding over the underlying habeas proceeding had been the trial court judge in petitioner's criminal trial. Petitioner does not dispute that the circuit court correctly applied the law regarding the ineffective assistance of counsel claims. Based on its analysis, the circuit court concluded that petitioner was not entitled to the requested habeas relief. Therefore, we find no abuse of discretion in the circuit court denying the amended petition for habeas corpus.

Further, petitioner argues that summary dismissal was erroneous because she would have introduced additional exhibits, such as affidavits, to support her claims for ineffective assistance of counsel, if she had been given an omnibus hearing. However, West Virginia Code § 53-4A-2 clearly provides that "[a]ffidavits, exhibits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition unless there is a recital therein as to why they are not attached." At no point in either her petition or the memorandum of law does petitioner assert that there was further information to support her petition that would only be available at an omnibus hearing; petitioner mentioned no other documents or evidence that would be forthcoming. In short, the record shows that petitioner's filings before the circuit court appear to contain all of the information relevant to her petition. Rule 9(a) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings provides that "[i]f the court determines that an evidentiary hearing is not required, the court shall include in its final order specific findings of fact and conclusions of law as to why an evidentiary hearing was not required." The circuit court properly found that petitioner did not identify any information that would be presented at an omnibus hearing and that enough evidence was presented for the circuit court to rule on the petition. Therefore, we find that the circuit court did not abuse is discretion by not holding an omnibus hearing or requesting expansion of the record.

Petitioner further alleges that the circuit court erred in dismissing the petition when the respondent did not move for dismissal pursuant to Rule 12(b)(6) or Rule 56 of the West Virginia Rules of Civil Procedure. Petitioner asserts that both rules permit a petitioner to file a response to avoid dismissal and that she was denied an opportunity to respond. We disagree. As set forth above in West Virginia Code § 53-4A-7(a), it is in the circuit court's discretion to enter an order denying relief if the circuit court is satisfied by the evidence presented. If the circuit court finds that a petitioner is not entitled to relief, there is no requirement to request additional information that might save the petition from dismissal.

Expansion of the record in habeas proceedings is governed by Rule 8(a) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings which provides that "[i]f the petition is not summarily dismissed, the court *may* direct that the record be expanded by the

3

parties" (emphasis added). The rule does not require that the circuit court give an opportunity to expand the record; it is discretionary. See *Rosen v.* Rosen, 222 W.Va. 402, 409, 664 S.E.2d 743, 750 (2008) ("[a]n elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion."). The petitioner should not have relied on the circuit court to request an expansion of the record. Accordingly, we find that the circuit court did not err in dismissing the amended petition of habeas corpus on its own motion.

Finally, petitioner argues that the circuit court erred in denying her petition because she received ineffective assistance of counsel. Specifically, petitioner claims that her attorney's representation was deficient for three distinct reasons: (1) counsel failed to strike a juror who was potentially a close friend of a friend of the victim; (2) counsel did not file a written motion requesting bifurcation of the guilt and mercy phases of petitioner's murder trial; and (3) counsel failed to seek severance of petitioner's trial from that of her co-defendant.

The circuit court thoroughly addressed each of these three claims in its order denying petitioner habeas relief. The circuit court's order includes well-reasoned findings and conclusions as to the assignment of error concerning ineffective assistance of counsel now raised on appeal, and we find no error or abuse of discretion in the circuit court's denial of petitioner's amended petition. Because we find no error, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's March 28, 2017, "Order Dismissing Petitioner's Petition for Writ of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's March 28, 2017, order denying petitioner's instant petition for writ of habeas corpus.

Affirmed.

**ISSUED**:   April 9, 2018

**CONCURRED IN BY**:
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

17-0403

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
DIVISION II

DANIELLE T. HILLING,

Petitioner,

v,

CASE NO: 14-C-589
Judge Russell M. Clawges, Jr.

LORI NOHE, Warden,
Lakin Correctional Facility,

Respondent.

## ORDER DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

This matter is before this Court upon the Amended Petition for Habeas Corpus Relief, filed by Danielle T. Hilling (hereinafter "Petitioner") on May 11, 2016. Respondent filed a Response on October 19, 2016. The Petitioner seeks relief from the convictions and sentences imposed upon her as a result of a criminal proceeding, styled State of West Virginia v. Danielle Hilling, Felony Case No. 06-F-146, which took place in the Circuit Court of Monongalia County, Division II, before the Hon. Russell M. Clawges, Jr., Circuit Judge.

Following a six-day trial, ending on April 24, 2007, the Petitioner was convicted by a jury of her peers of first degree murder without a recommendation of mercy and was sentenced by the court to serve life without the possibility of parole in the West Virginia State Penitentiary. She was also found guilty of conspiracy to commit murder and sentenced to not less than one (1) year nor more than five (5) years in the State Penitentiary. The Court imposed those sentences concurrently.

Attorney John Brooks represented Petitioner during the trial and her direct appeal to the Supreme Court. Petitioner timely filed her appeal with the West Virginia Supreme Court of

1

Appeals on January 16, 2008. The grounds raised by Petitioner in the appeal were (1) prejudicial statements by prosecutor, (2) insufficient evidence, (3) impermissible statements by co-defendant's counsel during closing argument, (4) refusal of continuance, (5) various errors in evidentiary rulings, and (6) refusal to bifurcate the issue of guilt and mercy. On May 22, 2008, the Petitioner's Petition for Appeal was refused by the West Virginia Supreme Court of Appeals.

Petitioner, also through attorney John Brooks, filed her first Petition for Writ of Habeas Corpus on February 17, 2010, in Civil Action No. 09-C-390. In that Petition she alleged seven (7) grounds on which she claims she is being held unlawfully: (1) refusal of continuance, (2) constitutional errors in evidentiary rulings, (3) prejudicial statements by prosecutor, (4) sufficiency of the evidence, (5) refusal to bifurcate the issue of guilt and mercy, (6) failure of the Court to strike a biased juror, and (7) impermissible statements by co-defendant's counsel during closing argument.

The Court denied Petition's claims and Petitioner, through counsel John Brooks, appealed to the West Virginia Supreme Court. The Supreme Court affirmed the trial court ruling in a Memorandum Decision on June 24, 2013. In the current Petition for Writ of Habeas Corpus, Petitioner, through attorney Teresa J. Lyons, now raises ineffective assistance of trial counsel.

After reviewing the Petition, the record, and all other pertinent documents in the file, this Court is of the opinion that the Petitioner is neither entitled to a hearing on her claims as asserted in the Petition, nor should she be given the relief requested.

## DISCUSSION

Once the Petition and Answer are filed, the matter is fully before the Court for disposition. If the Court's review of the file indicates that there is a need for the submission of

2

further evidence, then the Court must enter an order granting an evidentiary hearing. W. Va. Code § 53-4A-7(a). However, if the Court is satisfied that no evidentiary hearing is required, that the grounds have been waived, or otherwise fully adjudicated, it must enter an order with specific findings of fact and conclusions of law denying the relief requested. Id. "A habeas corpus proceeding is not a substitute for a writ of error and ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129 (1979).

### Ineffective Assistance of Trial Counsel

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, State v. Miller, 194 W.Va. 3 (1995).

"In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of Strickland v. Washington [citations omitted], and State v. Miller [citations omitted], but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syl. Pt. 5, State ex rel. Daniel v. Legursky, 195 W.Va. 316, (1995).

"In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a

3

reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, State v. Miller.

"Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, State v. Thomas, 157 W.Va. 640 (1974).

Petitioner's claim of ineffective assistance of counsel is based upon three allegations:

(A) Defense counsel failed to request that Juror Courtney Nicholas be stricken for cause and did not use a preemptory strike to remove her from the jury panel.

(B) Counsel failed to move to bifurcate the guilt phase from the mercy phase of the trial, prior to trial. Rather, trial counsel made only two oral motions to bifurcate -- one after the jury was selected and one after the State had rested its case.

(C) Counsel failed to move for a separate trial from co-defendant Hason Cleveland pursuant to Rule 14(b) of the West Virginia Rules of Criminal Procedure.

(A)

Petitioner, who is African-American, asserts that trial counsel's decision not to move to strike Juror Courtney Nicholas from the jury panel because she is also African-American constituted deficient performance. Attorney Brooks left Ms. Nicholas on the jury even though this prospective juror indicated during individual voir dire that she had a very close friend that she was pretty sure was close to some of the people affected by this crime.

4

This friend was upset and distraught about the death of the victim and the circumstances surrounding the disposal of the body. Initially when asked if she would be able to decide the issues in this case based only on the evidence she heard in the courtroom, she replied, "I think so. I'm not a hundred percent, but I think so." Later she was further questioned about what she talked with her friend about and what she may have heard in the media. The entire pertinent colloquy is as follows:

| | |
|---|---|
| The Court: | Ms. Nicholas, you indicated earlier that you may have read or listened to some of the news media about the case. Would you describe generally what you've read or listened to? |
| Ms. Nicholas: | I just heard things – it wasn't – I'm not sure if it was the same one, but I'd heard about things dealing with the body and things like that. And, then, I have a very close friend of mine that I'm pretty sure was – not involved with it, but, like, she's pretty close to some of the people that it affected, and I remember her talking about it. Like, when it came up, I was like, okay, that must've been what she was talking about. I remember her talking, and she was pretty distraught. |
| The Court: | Let me break it up into two things, then I'll ask you questions about both. As far as what you may have read or heard in the news, has that been recent or in the past? – |
| Ms. Nicholas: | It was like last year. |
| The Court: | Anything that you can remember having read or heard about in the news that would affect your ability to be impartial in this case? |
| Ms. Nicholas: | Not – no, not anything I read. |
| The Court: | Anything that would affect your ability to decide the case based only on the evidence that you hear here in the courtroom? |
| Ms. Nicholas: | No, nothing I read. |
| The Court: | Will you be able to disregarded [sic] anything that you may have heard or read in the news and decide the case based only on what you hear in the courtroom? |
| Ms. Nicholas: | Yes. |
| The Court: | Now, let's talk about the discussions or conversations that you had with a friend. Could you tell us who the friend is? |
| Ms. Nicholas: | I don't really want to. She was real – I mean, when she first talked to me about it, she was really like – she wouldn't really want me to say anything to anybody else about it. |
| The Court: | Well, I'll honor that for the time being. What was her connection? |

5

Ms. Nicholas: I think she lived near somebody that was real close to the victim, because I remember her talking about — her saying that her neighbor had called her and said, you know, somebody was dead and her being very emotional about it. I talked to her for a little bit about it, but, I mean, I wasn't like getting really into the details, because I didn't — I wasn't really sure of anything and I hadn't heard anything, but I remember her saying things like, you know, my neighbor or somebody — they found a body and she was pretty upset about it. She was upset about it because she knew the neighbor.

The Court: In those discussions were there any specifics about anything, other than the fact that there was a body and, apparently, this person was a neighbor or a friend or —

Ms. Nicholas: No, not really. It was just — I mean, she wasn't going on anything other than what she heard from — and, I guess, by news reports and the police and everybody had been around, but that was it. Like, she hadn't heard anything else.

The Court: If I understand right, those conversations all occurred a year ago whenever this --

Ms. Nicholas: Yeah, a year ago.

The Court: Is there anything about those conversations that would affect your ability to be an impartial juror?

Ms. Nicholas: I don't think so. I just — she's a really close friend of mine. I've been friends with her since I moved here when I was like ten years old. She's been a really close friend of mine. I mean, it really upset me to see her that upset over it, even though she wasn't directly acquainted with the person, she was pretty upset about it, and that kind of got to me that she was that upset about it, and I didn't like seeing her like that.

The Court: Was there anything in those discussions that related to either Mr. Cleveland or Ms. Hilling?

Ms. Nicholas: No, it was just the victim.

The Court: Do you think you would be able to decide the case, the issues in this case based only on the evidence that you hear in the courtroom?

Ms. Nicholas: I think so. I'm not a hundred percent, but I think so.

The Court: I think, and I didn't mark it specifically, but were you one of the jurors that indicated that there might be a reason that you don't want to sit on this jury? Were you one of those?

Ms. Nicholas: Yes. Partially was for that reason, and then partially like things — it was school related.

The Court: You're a college student?

Ms. Nicholas: Yes, full time.

6

\* \* \*

Ms. Ashdown: You mentioned your friend lived near where --

Ms. Nicholas: She lived near me on the other side of town, but her, I guess it was her ex-neighbor she was really close with lived down in that area of Grant, right around in there and had known --

Ms. Ashdown: So, it was your friend whose friend lived over there. Do I have that right?

Ms. Nicholas: Yeah. They were pretty – like me and her are pretty close, and then they were pretty close, and she lived right around that area, and I guess, either knew the victim or lived beside her or something.

Ms. Ashdown: Whatever was said by the person who actually used to live in that area was said to your friend, and then you saw your friend being upset about that?

Ms. Nicholas: Yeah, she was pretty upset about it, and then she told me about it.

Ms. Ashdown: How much did she tell you about it? Anything in particular or just the general --

Ms. Nicholas: Nothing – it wasn't anything specific. It was – I remember she was just saying she was pretty upset about it because it had happened near, I guess, the student section she was living in and she was saying she was pretty upset, and I guess, just more or less scared about it.

Ms. Ashdown: And, now, of course, that's been probably, over a year ago that these discussions were --

Ms. Nicholas: Yeah. I mean, after that day, it wasn't ever talked about again.

Ms. Ashdown: Has that discussion and, perhaps, the emotional turmoil that you had, even being removed in the way that you were, now receded into the past and you --

Ms. Nicholas: It was a little frightening at first, but, you know, it's been so long since that happened --

Ms. Ashdown: And even though you had those discussions, the names of witnesses who were listed by the Court today, none of those rang a bell, you don't know any of those people?

Ms. Nicholas: No. Huh-uh.

\* \* \*

Mr. Zimarowski: Ms. Nicholas, the conversations you had with your friend, were there any opinions expressed?

Ms. Nicholas: No, not really. It was just – basically, the conversation was like taken straight from what has been released, and she was just saying, they found this, they found this, they found this, and she was like – but she was really upset about it, and she had called a

7

|  |  |
|---|---|
|  | friend and she was upset, and she had talked to me when I saw her. When she was talking about it – most of the things that I heard about the case came from her. |
| Mr. Zimarowski: | Not from the media? |
| Ms. Nicholas: | I hadn't heard – like I heard little snippets and things, but most of the things I heard came from her, but I think most of the things from her came from – |
| Mr. Zimarowski: | From the media? |
| Ms. Nicholas: | Yeah. |
| Mr. Zimarowski: | And you understand, of course, you need to put all that aside if you're selected as a juror? |
| Ms. Nicholas: | Yeah. |
| Mr. Zimarowski: | And you can put all that aside? |
| Ms. Nicholas: | Yeah. |
| Mr. Zimarowski: | Okay. There is another issue, and I think this may be echoing some of your friend's sentiments over the, for lack of a better term, the disrespect shown to the body, does that concern you? |
| Ms. Nicholas: | Slightly, but, I mean, it's not anything – |
| Mr. Zimarowski: | Okay, it's not – was that a concern of your friend? |
| Ms. Nicholas: | Yeah. She's very religious, and that got to her more than anything, the way that it was treated and, you know, just tossed aside. |
| Mr. Zimarowski: | And you don't have an abnormal problem with – I can't say you're okay with it, but you're not going to put extra weight on it? |
| Ms. Nicholas: | No. |

\* \* \*

|  |  |
|---|---|
| Mr. Brooks: | Yes. Ms. Nicholas, is most of the things you talked about with your friend, to use Mr. Zimarowski's term, the disrespect to the body? |
| Ms. Nicholas: | More or less. Mostly, it was the way they found it and where, because it was a strange place. Like, they didn't understand why it would have been done in one place and found in another, like how did they get it there. It was more like questions. Like, they'd heard from the news that it happened in Sunnyside and there'd been an apartment or something and then they found the body in a different place. They were just confused. It was – more than anything it was just the way it had been found and it had been kind of carelessly tossed. |

8

Attorney Brooks successfully challenged other jurors, but did not challenge Ms. Nicholas. He did not request that Juror Nicholas be stricken for cause, nor did he use a preemptory strike. According to Petitioner, Attorney Brooks chose to keep Ms. Nicholas on the jury because of her race. Attorney Brooks' decision to leave Juror Nicholas on the panel can be considered trial strategy or tactic, as she was the only African-American pulled as a potential juror and she indicated her ability to set aside all that she had heard about the crime if she was selected as a juror. The Court cannot find that trial counsel's representation during jury selection was deficient under an objective standard of reasonableness.

(B)

"A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy." Syl. Pt. 4, State v. LaRock, 196 W.Va. 294 (1996). "The burden of persuasion is placed upon the shoulders of the party moving for bifurcation. A trial judge may insist on an explanation from the moving party as to why bifurcation is needed. If the explanation reveals that the integrity of the adversarial process which depends upon the truth-determining function of the trial process would be harmed in a unitary trial, it would be entirely consistent with a trial court's authority to grant the bifurcation motion." Syl. Pt. 5, Id. The trial court has enormous discretion and rarely will its ruling on bifurcation constitute reversible error. LaRock at 315. A showing of "compelling prejudice" amounting to fundamental unfairness is required by the Petitioner. Id.

"Although it virtually is impossible to outline all factors that should be considered by the trial court, the court should consider when a motion for bifurcation is made: (a) whether limiting

9

instructions to the jury would be effective; (b) whether a party desires to introduce evidence solely for sentencing purposes but not on the merits; (c) whether evidence would be admissible on sentencing but would not be admissible on the merits or vice versa; (d) whether either party can demonstrate unfair prejudice or disadvantage by bifurcation; (e) whether a unitary trial would cause the parties to forego introducing relevant evidence for sentencing purposes; and (f) whether bifurcation unreasonably would lengthen the trial." Syl. Pt. 6, LaRock.

On the second day of trial, prior to opening statements, trial counsel made an oral motion to bifurcate the mercy phase of sentencing should a verdict of first-degree murder be returned. This oral motion was made only in response to the Court's questioning and was not raised by a prior written motion. Neither the State nor co-defendant Hason Cleveland sought bifurcation. Trial counsel again raised the issue after the State had rested its case. Prosecuting Attorney Marcia Ashdown opposed the motion and stated that the motion should have been raised much earlier in the proceedings.

Initially, trial counsel indicated that there were at least three witnesses he planned to call to testify in regards to Petitioner's character and her relationship with certain family members as to why mercy should be granted. To support his motion to bifurcate, trial counsel expressed concern that these witnesses could not testify during the guilt phase of the trial and if the trial was not bifurcated, they would not get the chance to be heard. Otherwise, Petitioner argues that trial counsel failed to effectively articulate advantageous reasons to support bifurcation. In other words, Petitioner feels trial counsel was ineffective in the manner in which he requested bifurcation.

The trial court weighed the fact that one defendant wanted to bifurcate and the other did

10

not and determined that both defendants should be handled the same. Mr. Cleveland did not have any witnesses for the mercy phase. The Court indicated that Ms. Hilling's witnesses for the sentencing phase could be called during the trial with a cautionary or limiting instruction to the jury if requested. The State did not object to this. The Court took a recess to allow trial counsel to contact two of Petitioner's witnesses who were not already at the courthouse. Those two witnesses were not locatable; therefore, trial counsel called the one witness for sentencing purposes.

Petitioner has not presented the Court with any explanation as to why she feels bifurcation was needed. Nor has she advised the Court as to how she was harmed by a unitary trial. Petitioner does not contend that she was not permitted to call all the witnesses she wanted to or that she was prevented from introducing evidence pertaining to sentencing. She has not argued that there was any evidence improperly admitted as a result of the trial not being bifurcated.

Petitioner has not demonstrated that she suffered unfair prejudice or disadvantage by a unitary trial or that she had to forego introducing relevant evidence. Petitioner has not advised the Court of anything her trial counsel should have done that he didn't, or anything that he could have argued that would have changed the Court's ruling. Even if Attorney Brooks had made a written motion to bifurcate prior to the date of trial, this would not have changed the procedure or the outcome.

(C)

"If the joinder of defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the State, the Court may sever the defendants' trials, or

11

provide whatever other relief that justice requires." W.Va. R. Crim. P., Rule 14(b). "A trial court should grant a severance under Rule 14(b) of the West Virginia Rules of Criminal Procedure only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Syl. Pt. 5, State v. Boyd, 796 S.E. 2d 207 (2017).

The discretion given to trial courts under Rule 14(b) to require co-defendants be tried jointly is consistent with the general rule that defendants indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources. Boyd at 19 (quoting United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008)).

Trial counsel did not move for Petitioner's trial to be separate from co-defendant Hason Cleveland.[1] Petitioner argues that a reasonable lawyer would have filed a written motion requesting a separate trial. She further states that failing to do so was a denial of effective assistance of counsel. However, she does not set forth any justification for this. Petitioner does not pinpoint clearly and specifically how she was substantially prejudiced by not having a separate trial nor has she articulated how her joint trial was unfair. Also, Petitioner has not identified a specific trial right that the joint trial compromised to her detriment. Petitioner has not set forth what her trial attorney should have argued to persuade the Court to grant a motion for severance. She has not alleged that there was evidence in this case that was introduced against Hason Cleveland during trial that would not have been introduced against her, had there been separate trials.

---

[1] Petitioner, Danielle Hilling and her co-defendant, Hason Cleveland, were jointly indicted.

12

## CONCLUSION

Petitioner has not shown that trial counsel's performance was so deficient under an objective standard of reasonableness that she was denied the effective assistance of counsel. She has not proven that counsel made errors so serious that she was deprived of her Sixth Amendment right to professionally competent assistance. Furthermore, Petitioner has not shown that any errors made by trial counsel deprived her of a fair trial. Petitioner has not shown that but for trial counsel's actions and/or omissions, the result of her trial and sentencing would have been different. In summary, Petitioner has not affirmatively shown prejudice.

Petitioner has requested a hearing on this matter, but has not disclosed an expert opinion or indicated that any expert or other testimony would be taken at a hearing. Petitioner has not identified any evidence she wishes to introduce in support of her Petition.

As explained above, the Court finds Petitioner's claims to be without merit and none of the grounds that the Petitioner raises in her Petition for Writ of Habeas Corpus entitle her to the relief requested. Therefore, it is ORDERED that the Petition be, and hereby is, DENIED.

The Circuit Clerk of Monongalia County is directed to provide a copy of this Order to the Petitioner; her counsel, Theresa Lyons; and the Prosecuting Attorney of Monongalia County.

Enter this _____ day of March 2017

Russell M. Clawges, Jr., Chief Judge
17th Judicial Circuit, Division II.

ENTERED _March 28, 2017_

DOCKET LINE #: _42_

STATE OF WEST VIRGINIA SS:

JEAN FRIEND, CIRCUIT CLERK

I, Jean Friend, Clerk of the Circuit Court and Family Court of Monongalia County State aforesaid do hereby certify that the attached Order is a true copy of the original Order made and entered by said Court.

_____ Circuit Clerk