# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.H., L.H., and A.H.**

**No. 19-0335** (Wood County 18-JA-27, 18-JA-28, and 18-JA-29)

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.F., by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's February 27, 2019, order terminating her parental rights to C.H., L.H., and A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order, with the exception of the issue of jurisdiction.[2] The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court lacked jurisdiction pursuant to UCCJEA, erred in adjudicating the children as abused children, and erred in leaving post-termination visitation with the children to the discretion of the grandmother.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court below erred in failing to determine whether it had jurisdiction over the children under the UCCJEA. Accordingly, we reverse, in part, and remand on the limited issue of jurisdiction. Because this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, a memorandum decision is appropriate to resolve the issues presented.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The State concedes that the circuit court failed to make the necessary findings to establish whether it had jurisdiction over the children pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").

Prior to the initiation of the instant proceeding, petitioner's three children, C.H., L.H., and A.H., were placed in the custody of the maternal grandmother pursuant to an order issued by the Court of Common Pleas in Washington County, Ohio.[3] At some point, petitioner and the children's father, J.H., moved in with J.H.'s girlfriend, A.F., in West Virginia. A.F. had two children, A.J. and J.J., who are not at issue on appeal.[4] In February of 2018, the DHHR filed a child abuse and neglect petition against petitioner, J.H., and A.F. Specifically, the DHHR alleged that it initiated an investigation upon receiving a referral that police officers responded to the home following reports of child abuse. The investigation revealed that J.J. was severely bruised on his face and the back of his head. J.J. also had multiple thumbprint bruises, scabs, and cuts on his body, as well as bald spots on his head. Petitioner, A.F., and J.H. reported that the family's dog had bitten the child while A.F. was at work and the child was in the care of petitioner and J.H. A.F. also reported that J.J. pulled out his own hair. Due to the absence of bite marks on the child and his frightened demeanor, the DHHR continued to investigate the matter. Other adults who lived in the home reported that J.H. regularly picked J.J. up by his hair, called him names, and mistreated the child because he is biracial. Reportedly, J.H. also excessively and inappropriately disciplined the child. In response to questioning, petitioner and A.F. continued to claim that the child was bitten by a dog. Eventually, petitioner, J.H., and A.F. were arrested and charged with gross neglect of a child creating a substantial risk of bodily injury or death and child abuse resulting in injury. Following her arrest, petitioner admitted that she conspired with A.F. and J.H. to concoct the story of the dog biting J.J. to cover up the abuse.[5]

The circuit court held an adjudicatory hearing over the course of several days in September of 2018, October of 2018, and November of 2018. Based upon the testimony presented, along with the reports of the DHHR and law enforcement officers and photographs of J.J.'s injuries, the circuit court adjudicated petitioner as an abusing parent, finding that she allowed J.H.'s abuse of J.J. to continue and attempted to cover up the abuse by concocting the story about the dog bite.

In January of 2019, the circuit court held a dispositional hearing wherein it took judicial notice of the court file. Several exhibits were also admitted into evidence. The circuit court was advised that petitioner had been arrested on unrelated criminal charges in Ohio. Petitioner

[3]The circuit court found that the children had been placed in the custody of the grandmother in January of 2018. The record is unclear as to what evidence the circuit court based this finding on, given that it is silent as to when the children were placed with the grandmother.

[4]A.J.'s father is D.J., and J.J.'s father was thought to be J.R., although the proceedings below also dealt with an unknown father in the event that J.R. was not J.J.'s father.

[5]The petition was amended to include allegations of drug use in the home following J.H.'s and A.F.'s arrest and charges of two counts of possession with intent to deliver. The petition was also amended to include J.R., as well as an unknown father in the event that J.R. was not J.J.'s father.

conceded that she was not capable of exercising custodial rights to her children and argued that the grandmother should be able to continue as the legal guardian. Petitioner also conceded that it would be appropriate for the grandmother to exercise discretion regarding visits with the children. Ultimately, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. It is from the February 27, 2019, dispositional order that petitioner appeals.[6]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court lacked jurisdiction over the children under the UCCJEA when the record is clear that the children were living in Ohio at the time the petition was filed. Upon our review of the record, we find that the circuit court failed to properly ascertain whether it had jurisdiction over the children given that the children resided in Ohio and were placed in the custody of the grandmother pursuant to proceedings in Ohio.[7]

We have previously recognized that "'[s]ubject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, et seq.,

---

[6]J.H.'s parental rights to C.H., L.H., and A.H. were also terminated below. The permanency plan for the children is to remain in the custody of their maternal grandmother pursuant to the custody order issued by an Ohio court.

[7]Petitioner also raises two other assignments of error. However, because those issues are predicated upon the circuit court's proper exercise of jurisdiction, we need not address them at this time given that the case is being remanded with instructions to ascertain which state has jurisdiction over the children.

cannot be conferred by consent, waiver, or estoppel.' Syl. pt. 5, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)." Syl. Pt. 1, *In re J.C.*, 242 W. Va. 165, 832 S.E.2d 91 (2019). The Court in *Rosen* also held that "[t]he Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, et seq., is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 745, syl. pt. 6.

The requirements for subject matter jurisdiction under the UCCJEA are set out under West Virginia Code § 48-20-201(a).[8] This statute provides as follows:

(a) Except as otherwise provided in section 20-204, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.[9]

---

[8]*See* W. Va. Code § 48-20-201(b) ("Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State.").

[9]We have previously summarized these jurisdictional bases as follows:

(continued . . .)

(Footnote added). With these factors in mind, we turn to whether the circuit court properly assumed jurisdiction over the subject children.

Pursuant to West Virginia Code § 48-20-201(a)(1), a circuit court has subject matter jurisdiction under the UCCJEA if West Virginia is the "home state" of the child when an abuse and neglect petition was filed. We have previously explained that "'home state' means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 745, syl. pt. 3, in part. Here, the record is clear that the children were living in Ohio at the time of the petition's filing. Throughout the proceedings, petitioner claimed, and the circuit court ultimately found, that the children had been living with the grandmother in Ohio since January of 2018, only one month before the petition was filed. However, the record is devoid of any evidence indicating that petitioner's claims regarding this timeline are true, and importantly, where the children lived prior to living with the grandmother. Accordingly, given the information before us we are unable to determine whether West Virginia, Ohio, or some other jurisdiction was the home state of the children at the time the proceedings below were commenced.

There is no evidence in the record to show that any of the subject matter requirements of West Virginia Code § 48-20-201(a) were satisfied with regard to C.H., L.H., and A.H. Consequently, we are unable to conclude that the circuit court properly exercised subject matter jurisdiction over these children. For this reason, we reverse the circuit court's February 27, 2019, dispositional order, in limited part, and remand this matter to the circuit court for the holding of a hearing to determine whether the Circuit Court of Wood County properly assumed jurisdiction over the children pursuant to the UCCJEA.[10] The circuit court is hereby directed to immediately hold the appropriate hearing on the issue of jurisdiction and issue an order in this case within thirty days. If, after conducting a hearing, the circuit court determines the jurisdiction in this

---

[T]o exercise jurisdiction to determine child custody, a court of this state must satisfy one of the four bases of jurisdiction set forth in Section 201(a). These four bases have been aptly summarized as 1) "home state" jurisdiction; 2) "significant connection" jurisdiction; 3) "jurisdiction because of declination of jurisdiction"; and 4) "default" jurisdiction. These jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue.

*In re K.R.*, 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012).

[10]Again, the children J.J. and A.J. are not at issue on appeal. It is clear that jurisdiction over these children was not an issue. As such, this memorandum decision does not affect any termination of parental rights regarding J.J. and A.J. Any disposition regarding those children remains in effect.

State is proper, the remainder of the dispositional order remains intact. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Reversed, in part, and remanded with directions.

**ISSUED**:  February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison