94 P.3d 1220 (2004)
The People of the State of Colorado, Petitioner-Appellee,
In the Interest of M.C., a Child, and
Concerning J.C., Respondent-Appellant.
No. 02CA1888.
Colorado Court of Appeals, Div. I.
April 8, 2004.
*1221 Bruce T. Barker, County Attorney, Linda L. Goff, Assistant County Attorney, Greeley, Colorado, for Petitioner-Appellee.
Zapor Law Office, P.C., Rose Mary Zapor, Denver, Colorado; Larry Dean Valente, Westminster, Colorado, for Respondent-Appellant.
Opinion by Judge TAUBMAN.
J.C. (father) appeals from the judgment terminating the parent-child legal relationship with his daughter, M.C. We reverse and remand for further proceedings.
M.C. was born in Texas of the relationship between M.T. (mother), and J.C. While both parents were living in Texas, father obtained *1222 a temporary restraining order preventing mother from taking M.C. from father, changing M.C.'s residence from Santa Fe, Texas, withdrawing M.C. from school or day care, and removing M.C. beyond the jurisdiction of the Texas court.
In November 2000, father took his daughter to visit mother, who had moved to Colorado. During this visit, father was jailed briefly for creating a public disturbance at mother's workplace. As a result, a petition in dependency and neglect was filed against both parents on November 30, 2000. The petition did not advise the court of the Texas restraining order.
However, because of the Texas restraining order, the Weld County Department of Social Services concluded that M.C. could not be placed with mother, and, instead, she was placed in the temporary custody of the department.
Father requested that counsel be appointed to represent him, but this request was denied based on his income. Father appeared pro se and the dependency and neglect proceeding continued, resulting in the magistrate terminating both parents' parental rights in February 2002. Father sought review of the magistrate's decision and in August 2002 the district court adopted the magistrate's order.
Mother has not appealed the termination of her parental rights.
After the parties submitted their initial appellate briefs, we noted that documents filed by the department of social services indicated that a Texas restraining order was in effect when this proceeding commenced. Because we concluded that the determination of our subject matter jurisdiction might depend upon the existence of a restraining order in Texas and the duration of such order, we issued an order of limited remand. We directed the district court to hold an evidentiary hearing and make findings of fact and conclusions of law on the issue of subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), § 14-13-101, et seq., C.R.S.2003. See People in Interest of Clinton, 762 P.2d 1381 (Colo.1988)(any requirement implicating the court's subject matter jurisdiction cannot be waived and can be raised at any time).
Following a hearing, the district court concluded that Texas was M.C.'s home state and that the district judge and the magistrate had temporary emergency jurisdiction to hear the dependency and neglect proceedings, notwithstanding the existence of the Texas restraining order at the time this matter was filed. The appeal was then recertified to us, and at our request, the parties submitted supplemental briefs on the issue of subject matter jurisdiction.
Concluding that the district court exceeded its limited temporary emergency jurisdiction when this matter was filed, we now reverse.

I. Subject Matter Jurisdiction Under UCCJEA
Effective July 1, 2000, the UCCJEA replaced its predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJEA was enacted to revise the law on child custody jurisdiction in light of federal enactments and over almost thirty years of inconsistent case law under the UCCJA. Part 2 of the UCCJEA is intended to provide clearer standards for the exercise of original jurisdiction over a child custody determination, enunciate a standard of continuing jurisdiction, and clarify modification jurisdiction. See § 14-13-101 prefatory note.
Generally, a Colorado court has jurisdiction to make an initial child-custody determination if Colorado is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. See § 14-13-201(1)(a), C.R.S.2003. Under the UCCJEA, the "home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. Under the UCCJEA, the court that makes the initial custody determination generally retains exclusive continuing jurisdiction until the child and both parents leave the state or no longer have a significant connection with the state. See In re Marriage *1223 of Pritchett, 80 P.3d 918 (Colo.App.2003).
As relevant here, the UCCJEA also seeks to eliminate the simultaneous exercise of jurisdiction over custody disputes by more than one state. See In re Marriage of Pritchett, supra. Additionally, the UCCJEA specifies various circumstances when a court outside the home state may exercise temporary emergency jurisdiction to protect a child from the threat of immediate mistreatment or abuse. See § 14-13-204, C.R.S.2003.

A. Simultaneous Proceedings
Father contends that, apart from temporary emergency jurisdiction, the magistrate lacked subject matter jurisdiction under the UCCJEA to hear the dependency and neglect proceeding. We agree.
With respect to simultaneous proceedings, the UCCJEA, § 14-13-206, C.R.S.2003, provides, in pertinent part:
(1) Except as otherwise provided in section 14-13-204 [temporary emergency jurisdiction], a court of this state may not exercise its jurisdiction under this Part 2 if, at the time of the commencement of the proceeding, a proceeding concerning custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this article, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum....
(2) Except as otherwise provided in section 14-13-204, a court of this state, before hearing a child-custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to section 14-13-209. If the court determines that a child-custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with a provision of law adopted by that state that is in substantial conformity with this article, the court of this state shall stay its proceeding and communicate with the court of the other state.
Thus, if a child-custody proceeding was pending in Texas when the dependency and neglect action was filed here, the Colorado court would not have had jurisdiction unless the Texas proceeding had been terminated or stayed by the Texas court, because Colorado was a more convenient forum, or unless there was a basis for exercising emergency jurisdiction.
Here, on remand the district court properly found that the Texas action constituted a child-custody proceeding. That conclusion was correct under the broad definition of "child-custody proceeding" under the UCCJEA, § 14-13-102(4), C.R.S.2003, as including a proceeding "for divorce, dissolution of marriage, legal separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence and domestic abuse."
The first two exceptions under § 14-13-206(1) are not applicable. The Texas proceeding was pending when the dependency and neglect action was filed, and it was not dismissed until some three months later. Also, there was no stay entered by the Texas court. Thus, the district court did not have jurisdiction except, as discussed below, with respect to certain temporary emergency jurisdiction.
However, we note that § 14-13-206(2) also requires the Colorado court to examine the court documents and other information supplied by the parties pursuant to § 14-13-209, C.R.S.2003, to determine whether a child-custody proceeding has been commenced in a court of another state and, if so, to stay the proceedings in Colorado and communicate with the court of the other state.
Here, there is no information in the record indicating that the Colorado court ever communicated with the Texas court in response to the information provided by the department's family services plan concerning the Texas proceeding. As a result, requirements of § 14-13-209(1)(b), C.R.S.2003, were not satisfied. Accordingly, we conclude that the magistrate lacked subject matter jurisdiction to proceed unless the court had temporary emergency jurisdiction. We now turn to this issue.

B. Temporary Emergency Jurisdiction
Father next asserts that although the magistrate had temporary jurisdiction to enter *1224 an order to protect the child, it erred in not limiting the duration of its exercise of such jurisdiction. We agree.
Section 14-13-204 provides:
(1) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
....
(3) If there is a previous child-custody determination that is entitled to be enforced under this article, or a child-custody proceeding has been commenced in a court of a state having jurisdiction ... any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction.... The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
(4) A court of this state that has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction ... shall immediately communicate with the other court. A court of this state that is exercising jurisdiction pursuant to sections 14-13-201 to XX-XX-XXX, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.
Here, there is no dispute that the grounds for the exercise of temporary emergency jurisdiction under § 14-13-204(1) were established. Cf. E.P. v. Dist. Court, 696 P.2d 254 (Colo.1985)(decided prior to repeal and reenactment of the UCCJEA; state as parens patriae has jurisdiction to enter protective orders for children within its borders without regard to considerations of domicile).
However, the petition for dependency and neglect shows that the child had resided in Texas with her father and paternal grandparents since September 2000 and was in Colorado over the Thanksgiving holiday only to visit with mother, when both parents were arrested for various charges. Further, the record shows that the child was initially placed in foster care based upon the Texas restraining order prohibiting mother from certain actions. Additionally, the record indicates that father was arrested for causing a disturbance while looking for mother at her place of employment. Subsequently, because mother feared that father would return to Texas with her daughter and she would not see her daughter again, she falsely accused father of stealing money from her. As a result, mother was charged with criminal mischief and false reporting, and father was released from custody shortly thereafter.
Here, on remand, the district court found that the Texas action constituted a child-custody proceeding but did not result in a child-custody determination. In so concluding, the district court erred. Under § 14-13-102(3), C.R.S.2003, a child-custody determination is defined as:
a judgment, decree, or other order of a court providing for the legal custody or physical custody of a child or allocating parental responsibilities with respect to a child or providing for visitation, parenting time, or grandparent visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order.
A temporary restraining order constitutes a "custody determination" within the meaning of the UCCJEA. Cf. G.B. v. Arapahoe County Court, 890 P.2d 1153 (Colo.1995)(decided prior to repeal and reenactment of the UCCJEA). Thus, because there was both a child-custody proceeding and a child-custody determination in Texas, the magistrate should have entered only a temporary order for a specified period to allow father to seek an order from the Texas court. Section 14-13-204(3); see, e.g., In re C.T., 100 Cal. *1225 App.4th 101, 121 Cal.Rptr.2d 897 (2002); Campbell v. Martin, 802 A.2d 395 (Me.2002); In re Brode, 151 N.C.App. 690, 566 S.E.2d 858 (2002); Saavedra v. Schmidt, 96 S.W.3d 533 (Tex.Ct.App.2002).
In his motion for review of the magistrate's order of termination, father asserted that the magistrate erred in exceeding the bounds of her temporary emergency jurisdiction. In denying that motion, the district court found that father failed to file any Texas orders establishing that the Texas domestic violence proceeding constituted a custody determination. However, as noted, on remand the district court received into evidence a copy of the Texas restraining order.
Based on the restraining order and the information in the record advising the court of its existence, it was incumbent upon the magistrate to limit the duration of the exercise of temporary emergency jurisdiction. This was not done. We disagree with the district court's conclusion that temporary emergency jurisdiction could be exercised up to the date of the adjudicatory hearing on February 8, 2001. "Assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition." In re C.T., supra, 100 Cal.App.4th at 108, 121 Cal.Rptr.2d at 904. Likewise, we conclude that the exercise of temporary emergency jurisdiction may not last until the trial court can enter an adjudicatory order finding a child dependent and neglected.
That, indeed, is what occurred here. Because the trial court did not limit the duration of temporary emergency jurisdiction and did not contact the Texas court that issued a restraining order, the purpose of the UCCJEA was frustrated. As a result, father, who had resided in Texas before and during the commencement of these proceedings, had little opportunity to obtain a determination of permanent custody and attempt to prevent the termination of his parental rights in Texas, the home state of his daughter.
Accordingly, we conclude that the magistrate and the district court exceeded their jurisdiction by not limiting the period they exercised temporary emergency jurisdiction. This error was clearly not harmless, because it resulted in termination of father's parental rights without affording him the opportunity to litigate custody issues in the child's home state of Texas.
Accordingly, we reverse the judgment terminating father's parental rights. However, given the length of time that the child has now resided in Colorado, we remand this matter to the district court to make such temporary protective orders as are necessary for the welfare of the child. See E.P. v. Dist. Court, supra (although Colorado court did not have jurisdiction under UCCJA, it could enter temporary protective orders for the child's welfare).

II. Jurisdiction of Magistrate
Father contends in his supplemental brief that the magistrate did not have subject matter jurisdiction to preside over the termination hearing because magistrates are not authorized to hear matters involving allocation of parental responsibilities. Because this issue may arise during limited proceedings on remand, we address it and reject father's argument.
Relying on In re Marriage of Ferris, 75 P.3d 1170 (Colo.App.2003), and § 13-5-301(3)(e)(V), C.R.S.2003, father contends that a magistrate may only preside over matters where the allocation of parental responsibilities is not an issue. However, that reliance is misplaced. By its terms, § 13-5-301(3)(e)(v) regulates magistrate hearings under the Uniform Dissolution of Marriage Act. Significantly, §§ 19-1-108(3)(a) and (c), C.R.S.2003, of the Children's Code authorize magistrates to conduct termination hearings in dependency and neglect cases unless a specific request is made by any party that the hearing be held before a district judge. No such request was made here. Accordingly, the magistrate had authority to consider the dependency and neglect proceedings before her.

III. Appointment of Counsel
Next, father asserts that he was denied due process by the court's failure to appoint counsel for him without considering his entire financial circumstances. Because this issue may be implicated in any further proceedings *1226 on remand, we address it now. We disagree.
At the first appearance in a dependency and neglect proceeding, a parent must be advised of the right to be represented by counsel at every stage of the proceeding and of the right to seek appointed counsel if he or she is financially unable to secure counsel. Sections 19-1-105(2), 19-3-202(1), C.R.S.2003. Section 19-3-602(2), C.R.S.2003, provides that, after a motion to terminate is filed, a parent who is not represented by counsel must again be advised of the right to counsel and further provides that "counsel shall be appointed in accordance with the provisions of section 19-1-105." People in Interest of V.W., 958 P.2d 1132 (Colo.App.1998); see also People in Interest of L.L., 715 P.2d 334 (Colo.1986).
The person seeking court-appointed counsel bears the initial burden of establishing his or her indigency. Waters v. Dist. Court, 935 P.2d 981 (Colo.1997). The determination of indigency ultimately is a discretionary decision for the trial court. People in Interest of M.N., 950 P.2d 674 (Colo.App.1997).
Here, father concedes that he received written notice of the right to counsel both at the commencement of the case and when the motion to terminate was filed. A review of father's first application for the appointment of counsel shows that his monthly income was $3200, without any stated expenses, and that he owned three automobiles, with a total value of $13,000.
Thus, under the guidelines for the determination of eligibility for court-appointed counsel set forth in Chief Justice Directive 97-02, father was not eligible for the appointment of state-paid counsel, even if his monthly expenses equaled or exceeded his monthly income.
Further, although the court may consider or determine that extraordinary circumstances exist for the appointment of counsel, it was not required to do so. Nor was the court required to provide father with counsel, pending later reimbursement, or with information to assist him in obtaining private counsel.
Neither § 19-3-602(2) nor Chief Justice Directive 97-02 requires that the parent be provided with another application form to establish indigency after a motion to terminate is filed. Rather, the statutory right to appointed counsel at any stage of a dependency and neglect proceeding, including termination, must be invoked by a parent's request for an attorney. People in Interest of V.W., supra.
The record does not show that father ever requested appointment of counsel, claimed that his monthly income or expenses had changed, or argued that he had unsuccessfully tried to obtain his own counsel. Furthermore, § 19-3-602(1), C.R.S.2003, explicitly states that the separate hearing following adjudication of a child as dependent and neglected is for the purpose of considering the motion for termination of the parent-child legal relationship. Thus, we are not persuaded by the argument that a separate hearing to determine indigency was required.
Accordingly, the judgment terminating father's parent-child legal relationship is reversed, and the case is remanded to the trial court for further temporary protective orders consistent with the views in this opinion.
Judge KAPELKE and Judge LOEB concur.