IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Nos. 22-0384, 22-0387, and 22-0388

IN RE A.T.-1, A.T.-2, and B.T.-1

Appeal from the Circuit Court of Berkeley County
The Honorable Bridget Cohee, Judge
Case Nos. 21-JA-197, 21-JA-198, and 21-JA-199

VACATED AND REMANDED

Submitted:  April 25, 2023
Filed:  June 8, 2023

Phil Isner, Esq.
Isner Law Office LC, Inc.
Elkins, West Virginia
Counsel for Petitioner B.T.-2

Jeremy B. Cooper, Esq.
Blackwater Law, PLLC
Aspinwall, Pennsylvania
Counsel for Petitioner E.T.

Jared M. Adams, Esq.
Adams Law Firm, PLLC
Martinsburg, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent
Department of Health and Human
Resources

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "The Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, is a jurisdictional statute, and the requirements of the

i

statute must be met for a court to have the power to adjudicate child custody disputes." Syllabus Point 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008).

4.    "All courts must be watchful for jurisdictional issues arising under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), West Virginia Code §§ 48-20-101 to -404 (2001).  Even if not raised by a party, if there is any question regarding a lack of subject matter jurisdiction under the UCCJEA then the court should sua sponte address the issue as early in the proceeding as possible."  Syllabus Point 5, *In re Z.H.*, 245 W. Va. 456, 859 S.E.2d 399 (2021).

WALKER, Chief Justice:

The conduct that led to the filing of the abuse and neglect petition in this case occurred while a family that lives in Pennsylvania was at a relative's home in West Virginia, and there is no dispute that the circuit court appropriately exercised temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[1] in removing the children from the care of their parents on a temporary basis. But, the circuit court conducted an adjudicatory hearing and issued rulings adjudicating the parents as abusive and neglectful. And then after the hearing, but before the adjudication order was entered, the circuit court contacted the home state of Pennsylvania about jurisdiction. After Pennsylvania declined jurisdiction, the court then entered the adjudicatory order, proceeded to disposition, and terminated the parental rights of the mother and father. On appeal, the petitioner parents argue that the circuit court's order is void for lack of subject-matter jurisdiction under the UCCJEA. We agree that the limitations of the circuit court's temporary emergency jurisdiction did not permit it to entertain an adjudication of the abuse and neglect petition unless and until Pennsylvania, the home state, declined jurisdiction. We therefore vacate the circuit court's order terminating the parents' parental rights and remand with instructions.

**I. FACTS AND PROCEDURAL HISTORY**

---

[1] W. Va. Code §§ 48-20-101 to -404 (2001).

On September 8, 2021, the Department of Health and Human Resources (DHHR) in Berkeley County filed an abuse and neglect petition against the parents, E.T. and B.T.-2, alleging that they had abused and/or neglected their three children, A.T.-1, A.T.-2, and B.T.-1. A.T.-1 and A.T.-2 are siblings who were adopted by the parents, and B.T.-1 is the parents' older, biological child. The petition acknowledged that the parents and the subject children were Pennsylvania residents but outlined conduct that had occurred while the children were at the grandmother's home in West Virginia.[2] The petition alleged that the children's mother forced A.T.-1 to sing a song with lyrics that everyone hated him and hit him with an open hand and a belt. The petition alleged that the mother screamed that she hated him and was going to kill him, then threw him onto the ground and choked him until petitioner father pulled her off the child. The petition also alleged that A.T.-2 and B.T.-1 witnessed the abuse. Specifically, A.T.-2 told the Child Protective Services (CPS) worker that her mother choked A.T.-1 until his face turned blue. B.T.-1 gave a similar version of events, and also disclosed that it had happened before, but not as bad, and that A.T.-1 enjoyed pushing the mother's buttons.

The children's aunt called law enforcement and was told to take the child from the scene and wait in the car. EMS arrived and took A.T.-1 to Berkeley Medical

---

[2] Consistent with our treatment of cases involving sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015). *See also* W. Va. R. App. P. 40(e).

Center for examination.   The petition alleged that, during transport, A.T.-1 disclosed a history of abuse, including choking and starvation for "do[ing] something bad" and that he is the only one to get punished because the parents only wanted his sister, A.T.-2, and "got stuck with him too."  A.T.-1 also disclosed that his father "doesn't like to do it" but that his mother makes the father hit A.T.-1 with a belt, too.  A.T.-2 corroborated that the parents don't let A.T.-1 eat when he is bad.

The maternal aunt, according to the petition, disclosed that she and the grandmother had A.T.-1 for the last three months until about two weeks prior to the incident as petitioner mother had threatened to harm him.  She corroborated A.T.-1's statement that petitioner mother wanted only A.T.-2 and that petitioner mother would only give A.T.-1 oatmeal and water and make him stay in his bedroom night and day.

The grandmother told CPS workers that petitioner mother is a doting mother to the other two children, but A.T.-1's behavioral problems have put her at wit's end. According to the grandmother, the mother has tried to have him tested for autism or put in a behavioral/alternative school, but the school doesn't think he has any issues.  She also disclosed that petitioner parents lock his bedroom door so that he can't get out and that he has climbed out of his bedroom window to get into the kitchen to get food, that he drinks out of the toilet, drinks perfume, eats dog food, and has eaten out of the trash can.

3

The petition alleges that A.T.-1 was both an abused and neglected child based on those allegations and alleged that A.T.-2 and B.T.-1 were abused children as they resided in the home and had witnessed the abuse. As to the father, it alleged physical and emotional abuse as well as a failure to protect the children from the mother.

The circuit court entered an order on September 8, 2021, placing custody of the children with DHHR pending the preliminary hearing. Petitioner parents waived their preliminary hearing and filed answers to the petition, admitting to the substantive allegations in the petition. The circuit court held an adjudicatory hearing on November 9, 2021. During that hearing, petitioner parents admitted to the substantive allegations of the petition consistent with their answers to the petition and waived their right to a contested adjudication after a colloquy with the court to that effect. The court also made a finding on the record of aggravated circumstances. It acknowledged that adjudication was complete and set the case for disposition. After accepting the stipulations, the court then addressed jurisdiction, noting that the case involved Pennsylvania respondents and children as alleged in the petition and acknowledged that its jurisdiction fell under emergency jurisdiction.

Later, on November 19, 2021, the circuit court contacted a Pennsylvania court to address jurisdiction under the UCCJEA and the Pennsylvania court declined jurisdiction, agreeing that West Virginia was the more appropriate forum, for, among other reasons, the fact that an adjudicatory hearing had already been conducted. The

4

administrative order as to jurisdiction relays that the Pennsylvania court agreed West Virginia was the more appropriate forum due to the significant connection of the children to the kinship providers in West Virginia, declination of home state jurisdiction, and the substantial evidence available in the State of West Virginia. The circuit court entered an order as to jurisdiction on December 17, 2021.

The circuit court entered the order reflecting its rulings at the November 9, 2021 adjudicatory hearing on January 7, 2022. Consistent with the rulings made from the bench, the order noted the stipulations of petitioner parents to the substantive allegations of the petition and the finding of aggravated circumstances. The case proceeded to disposition.

The parents obtained their own services since DHHR was not required to provide them due to the aggravated circumstances finding. At the dispositional hearing, the parents minimized the incident in West Virginia, with the mother stating that the reason they were there was because she had lost her temper and spanked A.T.-1. In response to follow up as to whether there was anything else, she responded "no." Petitioner parents also blamed their conduct on A.T.-1's behavioral problems and said that petitioner mother had her hands on A.T.-1's "collarbone" and she denied ever choking him. The circuit court learned that B.T.-1 did not want his parents' rights terminated and that he wished to be reunited with them. It also heard testimony that B.T.-1 was withdrawn due to the absence

of his parents, especially considering that he had some serious health issues and wanted their comfort.

Ultimately, the circuit court terminated the parents' rights to all three children but left open post-termination visitation in a therapeutic setting with B.T.-1. On appeal, there are two separate issues. First, the parents raise a jurisdictional challenge under the UCCJEA. They contend that the circuit court adjudicated them prior to obtaining declination jurisdiction from the home state of Pennsylvania, and, relatedly, do not have the necessary information to substantively challenge jurisdiction because the circuit court failed to make a record of its communication with the Pennsylvania court. Second, the parents and the Guardian ad Litem, on behalf of B.T.-1, challenge the circuit court's decision to terminate parental rights as to B.T.-1 over his express wishes.

## II. STANDARD OF REVIEW

In reviewing dispositional rulings in abuse and neglect cases, we apply the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a

6

reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[3]

In examining the issue of subject-matter jurisdiction under the UCCJEA, our review is de novo: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[4] With those standards in mind, we turn to the parties' arguments.

## III. ANALYSIS

Jurisdiction in interstate child custody disputes, including abuse and neglect proceedings, is governed by the UCCJEA.[5] The UCCJEA's requirements have been determined by this Court to demand a subject-matter jurisdiction analysis before a circuit court may proceed to reach the merits of an abuse and neglect petition: "[t]he Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, is a jurisdictional statute, and the requirements of the statute must be met for a court to

---

[3] Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[4] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

[5] *See* W. Va. Code § 48-20-201(b); *In re J.C.*, 242 W. Va. 165, 170, 832 S.E.2d 91, 96 (2019) ("We note at the outset that, for purposes of the UCCJEA, an abuse and neglect proceeding comes under its definition of a 'child custody proceeding.'") (citation omitted).

have the power to adjudicate child custody disputes."[6] Under the UCCJEA, a "child custody determination" means "a judgment, decree or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order[.]"[7]

West Virginia Code § 48-20-201(a) outlines when a court of this State has jurisdiction over abuse and neglect proceedings that implicate the UCCJEA due to interstate contacts of the subject family: [8]

> (a) Except as otherwise provided in section 20-204, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, and:
>
> (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant

---

[6] Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008).

[7] W. Va. Code § 48-20-102(c).

[8] *See id.* § 48-20-201(b): "[s]ubsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State."

connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

The jurisdictional criteria was helpfully summarized in *In re K.R.* as "1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction."[9]

Importantly, "[t]hese jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue."[10] We have discussed that "but for the exercise of 'temporary emergency' jurisdiction as provided in Section 204 of the UCCJEA, to exercise jurisdiction to determine child custody, a court of this state must

---

[9] 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012).

[10] *Id.*

9

satisfy one of the four bases of jurisdiction set forth in Section 201(a)."[11] And, jurisdiction may not be obtained under this statute until there is declination of home state jurisdiction (assuming, where, as here, there is an undisputed home state) because West Virginia Code § 48-20-201(a) is a descending priority statute; the subsections are not alternative sources of jurisdiction. The analysis does not move to a subsequent basis of jurisdiction if there is a home state that satisfies subsection (1): "[o]ne of the requirements under West Virginia Code § 48-20-201(a)(2) (2001), for a circuit court to *obtain* subject matter jurisdiction of a child whose home state is not West Virginia, is that a 'court' of the home state of the child must decline to exercise jurisdiction[.]"[12] To this point—that a court of this state obtains jurisdiction when another state having a higher statutory priority of jurisdiction declines it—this Court has previously quoted, by way of example, from a California case that the "'California court obtained jurisdiction on July 19, 2017, the date the Nevada court declined to exercise jurisdiction.'"[13]

But West Virginia Code § 48-20-204(a) permits courts to take temporary emergency jurisdiction if the circumstances so warrant:

---

[11] *Id.*

[12] Syl. Pt. 4, in part, *In re J.C.*, 242 W. Va. 165, 832 S.E.2d 91 (emphasis added); *see also*, Syl. Pt. 9, *In re Z.H.*, 245 W. Va. 456, 859 S.E.2d 399 (2021) (requiring home state and any state with significant connection to decline jurisdiction before a court may obtain jurisdiction under West Virginia Code § 48-20-201(a)(3)).

[13] *In re J.C.*, 242 W. Va. at 174, 832 S.E.2d at 100 (quoting *In re E.R.*, 238 Cal. Rptr. 3d 871, 876 (Cal. Ct. App. 2018)).

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

No party here challenges that the circuit court had the authority to exercise temporary emergency jurisdiction over the children based on West Virginia Code § 48-20-204(a), but the petitioner parents contend that the circuit court exceeded the scope of that temporary emergency jurisdiction by conducting an adjudicatory hearing *prior* to Pennsylvania declining to exercise home-state jurisdiction. And, for that reason, they argue that the circuit court was without authority to have terminated their parental rights. DHHR and the Guardian ad Litem argue that because the circuit court had obtained declination jurisdiction by the time the adjudicatory order was entered, the circuit court appropriately exercised jurisdiction in this case and that no interests are served by vacating and remanding. Those arguments require that we consider the limitations on the *scope* of a court's authority when it exercises temporary emergency jurisdiction before the home state has declined jurisdiction over the abuse and neglect proceeding.

As the name suggests, temporary emergency jurisdiction is, first and foremost, temporary. And, the scope of the circuit court's temporary emergency jurisdiction, being emergent in nature, is narrow. We have rejected the notion that emergency jurisdiction under West Virginia Code § 48-20-204(a) might double as continuing subject-matter jurisdiction under § 48-20-201(a) to empower the circuit court to preside over the merits of the abuse and neglect petition:

11

Courts addressing temporary emergency jurisdiction, under their version of the UCCJEA, have found that the power of a court under this provision is limited. It has been held that "[b]y its very nature, temporary emergency jurisdiction exists only for a limited period." *Beauregard v. White*, 972 A.2d 619, 626 (R.I. 2009). It has also been recognized that the "exercise of temporary emergency jurisdiction may not last until the trial court can enter an adjudicatory order finding a child dependent and neglected." *In re State ex rel. M.C.*, 94 P.3d 1220, 1225 (Colo. App. 2004). *See In re Brode*, 151 N.C.App. 690, 566 S.E.2d 858, 860 (2002) ("When a court invokes emergency jurisdiction, any orders entered shall be temporary protective orders only."); *Saavedra v. Schmidt*, 96 S.W.3d 533, 549 (Tex. App. 2002) ("A court's exercise of temporary emergency jurisdiction is temporary in nature and may not be used as a vehicle to attain modification jurisdiction for an ongoing, indefinite period of time."). Under the facts of the instant case, the circuit court's temporary emergency jurisdiction ended when DHHR filed the abuse and neglect petition. *See WP v. MS*, 141 Hawai'i 246, 407 P.3d 1282 (Ct. App. 2017) ("Temporary emergency jurisdiction under the UCCJEA is temporary and limited and does not include the authority to make permanent custody determinations."); *In re Gino C.*, 224 Cal. App. 4th 959, 965–66, 169 Cal. Rptr. 3d 193, 197 (2014) ("temporary emergency jurisdiction does not confer authority to make a permanent child custody determination."); *In re N.R.*, 2009 WL 1508568, at *14 (Neb. Ct. App. May 26, 2009) ("we conclude that while the juvenile court had temporary emergency jurisdiction with regard to Ay.R., the juvenile court erred when it terminated Rony's and Jessica's parental rights to Ay.R. without satisfying the requirements of the UCCJEA.").[14]

Consistent with that case law, we reiterate that the scope of temporary emergency jurisdiction under West Virginia Code § 48-20-204(a) is limited to protecting

---

[14] *In re J.C.*, 242 W. Va. at 174 n.28, 832 S.E.2d at 100 n.28.

the child pending action by the home state, if one exists. Other courts have likened the scope of temporary emergency jurisdiction to the entry of a temporary protective order, effective *only* until the home state is notified and either assumes jurisdiction over the children or declines to do so.[15]

We have made similar conclusions based on West Virginia Code § 48-20-204(b). That statute provides, in relevant part, that:

> [i]f a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 20-201 through 20-203, inclusive, of this article, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

In *In re Z.H.*, this Court addressed the argument that West Virginia Code § 48-20-204(b) permitted emergency jurisdiction (to enter an order ratifying removal of a child) to evolve into a permanent order since another state did not institute abuse and neglect proceedings.[16] That argument was rejected, in part, because under our State law, pre-petition removals are always temporary and emergent pending the filing of the petition and because there was no reason for a court of another state to step in post-emergent removal when it was not made

---

[15] *See, e.g.*, *Zimmerman v. Biggs*, 848 N.W.2d 653, 657 (Neb. 2014) ("under the UCCJEA, a court may exercise emergency temporary jurisdiction under the act, but such a determination remains in effect only until a court that would have jurisdiction to make an initial custody determination (i.e., the home state of the child) enters an order."); *accord*, *In re D.N.H.W.*, 955 So.2d 1236, 1239 (Fla. Dist. Ct.App. 2007).

[16] 245 W. Va. at 468, 859 S.E.2d at 411.

aware that there was any emergent situation that needed addressed.[17] Underscoring the limited scope of temporary emergency jurisdiction, the Court concluded that temporary emergency jurisdiction in that case ended upon the filing of the petition. "[W]hile the circuit court was entirely within its authority and jurisdiction to protect [the child] from imminent harm by ratifying the emergency, pre-petition removal, West Virginia Code § 48-20-204 did not confer home state jurisdiction upon the circuit court to continue presiding over the subsequent litigation."[18] Temporary emergency jurisdiction, then, did not provide a basis of subject-matter jurisdiction for the circuit court to have reached the merits of the abuse and neglect proceedings that ensued after the removal of the children.

In this case, the children's home state is Pennsylvania. So, Pennsylvania was the only state with jurisdiction to reach the merits of an abuse and neglect proceeding relative to the custody of the children until it ceded that jurisdiction. In other words, under § 48-20-201, no West Virginia court could assume jurisdiction over this abuse and neglect proceeding and adjudicate the parents until Pennsylvania declined to exercise its home-state jurisdiction. Here, the circuit court adjudicated the parents before Pennsylvania declined to exercise jurisdiction, meaning the court adjudicated them without the authority to do so.

---

[17] *Id.* at 468-69, 859 S.E.2d at 411-12.

[18] *Id.* at 469, 859 S.E.2d at 412.

14

DHHR and the Guardian ad Litem advocate that any jurisdictional defect in adjudication can be cured since the circuit court had obtained declination jurisdiction by the time it entered the adjudicatory order. While a court speaks through its orders, we have clarified that in the UCCJEA context, temporary emergency jurisdiction does not permit a circuit court to "continue presiding over the subsequent litigation" of child custody as though West Virginia is the home state.[19] Bearing in mind that temporary emergency jurisdiction is a basis of authority to protect a child, not a basis of subject-matter jurisdiction over the resulting abuse and neglect proceedings, the question in adjudication of cases involving the UCCJEA is not whether jurisdictional authority was at some point properly acquired, the question is whether the circuit court had the jurisdiction to entertain the merits of the child abuse and neglect proceeding pursuant to West Virginia Code § 48-20-201 when it did.

In this case, subject-matter jurisdiction under West Virginia Code § 48-20-201 was not "obtained" until Pennsylvania declined to exercise jurisdiction[20] and the circuit court conducted an adjudicatory hearing prior to contacting the court in Pennsylvania. During that hearing, it made rulings of a permanent nature in adjudicating the parents as abusive and neglectful, made a finding of aggravated circumstances, and set the case for disposition – all while purporting to proceed under temporary emergency

---

[19] *Id.*

[20] *See supra* n.13.

15

jurisdiction.[21]  Later, when the Pennsylvania court declined jurisdiction, it did so, in part, because an adjudicatory hearing had already been cond ucted.  At that point, West Virginia then obtained jurisdiction to make a child custody determination under West Virginia Code § 48-20-201, meaning that the rulings as to adjudication made by the circuit court before then were simply void.

The inability to "cure" a jurisdictional defect in the UCCJEA context by later acquiring jurisdiction is best illustrated by the instructions issued in *In re J.C.*  In that case, this Court concluded that Virginia had never declined jurisdiction, meaning that no West Virginia court had actually obtained jurisdiction to reach the merits of the abuse and neglect proceedings. [22]  And even if Virginia declined, we found that North Carolina was a more appropriate forum than West Virginia.[23]  Importantly, this Court did not conditionally vacate the dispositional order pending contact with Virginia and North Carolina to determine whether jurisdiction could be cured.  Rather, we remanded the case with instructions for the circuit court to contact Virginia and, alternatively, North Carolina, and,

---

[21] *See In re K.R.*, 229 W. Va. at 739 n.14, 735 S.E.2d at 888 n.14 ("It is clear that the adjudication hearing conducted on April 14, 2011, was for the purpose of determining permanent guardianship and was no longer of a 'temporary' or 'emergency' nature . . . ."). *See also supra* n.14, citing *In re State ex rel. M.C.*, 94 P.3d 1220, in which a Colorado appellate court concluded "[w]e disagree with the district court's conclusion that temporary emergency jurisdiction could be exercised up to the date of the adjudicatory hearing[.]" *Id.* at 1225.

[22] *In re J.C.*, 242 W. Va. at 175, 832 S.E.2d 101.

[23] *Id.* at 175-76, 832 S.E.2d at 101-02.

16

upon declination of jurisdiction in those states, required the circuit court to *hold de novo adjudicatory and dispositional hearings.*[24] Instructions requiring *de novo adjudicatory and dispositional hearings* were likewise issued in *In re Z.H.*, another case where home-state declination was necessary before the West Virginia court had the jurisdictional authority to hear the abuse and neglect case.[25] We find the facts of this case similarly require the circuit court to conduct de novo adjudicatory and dispositional hearings.

This resolution is far from ideal; we acknowledge that no interests are served by vacation and remand. But in this UCCJEA analysis, subject-matter jurisdiction does not ask whether interests are served, it asks whether the legal criteria for an exercise of authority was met. It is for that reason that this Court held in *In re Z.H.* that in cases that even so much as hint that the UCCJEA may apply, the jurisdictional question needs addressed immediately:

> All courts must be watchful for jurisdictional issues arising under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), West Virginia Code §§ 48-20-101 to -404 (2001). Even if not raised by a party, if there is any question regarding a lack of subject matter jurisdiction under the UCCJEA then the court should sua sponte address the issue as early in the proceeding as possible.[26]

---

[24] *Id.* at 176, 832 S.E.2d at 102.

[25] 245 W. Va. at 472, 859 S.E.2d at 415.

[26] *Id.* at Syl. Pt. 5.

17

This case is not one of murky home-state facts where the circuit court needed to be "watchful" of hidden jurisdictional questions. Rather, the circuit court was aware upon the filing of the petition that Pennsylvania was the home state, knew it needed to contact the Pennsylvania court before it did anything else in the case, but nonetheless held an adjudicatory hearing and issued a ruling from the bench adjudicating the parents.[27] Well intentioned as it may have been, the circuit court exceeded the scope of its temporary, emergency jurisdiction in doing so prior to contacting the Pennsylvania court and obtaining jurisdiction to consider the merits of the abuse and neglect petition. For that reason, we are forced to vacate the termination order that stemmed from that adjudication:

> "A decree entered in a pending suit in which the court lacks jurisdiction of the subject-matter is to that extent void[.]" Syl. Pt. 5, in part, *State ex rel. Hammond v. Worrell*, 144 W. Va. 83, 106 S.E.2d 521 (1958), *overruled on other grounds by Patterson v. Patterson*, 167 W. Va. 1, 277 S.E.2d 709 (1981); *see also, J.C.*, 242 W. Va. at 175, 832 S.E.2d at 101 (declaring abuse and neglect dispositional order void for circuit court's lack of subject matter jurisdiction under UCCJEA); *Universal Underwriters*, 239 W. Va. at 347, 801 S.E.2d at 225 (concluding that order deciding motion to dismiss was "void and unenforceable" because circuit court lacked subject matter jurisdiction); *TermNet Merch. Servs.*, 217 W. Va. at 700, 619 S.E.2d at 213 (recognizing that "any decree made by a court lacking jurisdiction is void"); *Jackson v. Pszczolkowski*, 2018

---

[27] We have also held that "[s]ubject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48-20-101, *et seq.*, cannot be conferred by consent, waiver, or estoppel[,]" Syl. Pt. 5, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008), and that lack of jurisdiction may be raised for the first time in this Court. *See* Syl. Pt. 4, *In re Z.H.* But we stress that where, as here, the parents and the Guardian ad Litem were fully aware of the presence of a clear jurisdictional issue, it behooves all involved to raise the issue and have the circuit court resolve it before proceeding because only the children suffer from any delay in the failure to do so.

18

WL 5099642, at *2 (W. Va. Oct. 19, 2018) (memorandum decision) ("Without subject matter jurisdiction, any ruling issued by the circuit court would have been void.").[28]

## IV. CONCLUSION

For the above-stated reasons, we vacate the April 18, 2022 order terminating the parents' parental rights and remand for the circuit court to contact the appropriate court in Pennsylvania to confirm it is declining to exercise jurisdiction given the outcome of this appeal.[29] If Pennsylvania declines jurisdiction, then the circuit court will have subject-matter jurisdiction to proceed under West Virginia Code § 48-20-201 and it is instructed to conduct de novo adjudicatory and dispositional hearings. To facilitate expeditious resolution, the mandate of this Court is issued contemporaneously with this Opinion.

---

[28] *In re Z.H.*, 245 W. Va. at 472, 859 S.E.2d at 415.

[29] We require the circuit court to contact the Pennsylvania court to confirm it is declining to exercise jurisdiction for two reasons. First, one of the reasons stated for declination of jurisdiction was that the adjudicatory hearing had already been conducted and, here, we conclude the circuit court was without jurisdiction to have conducted that hearing. Second, there are references in the record to contact with Pennsylvania authorities similar to our own DHHR, and we are without sufficient information to conclude whether there is (or was) any pending action in Pennsylvania. Because we require this confirmation from Pennsylvania, we need not address petitioner parents' assignment of error relative to the circuit court's failure to make a record of its original communication. Nevertheless, we remind the circuit court of the import of complying with West Virginia Code § 48-20-110 (2001) when making that communication with Pennsylvania on remand. And, because we vacate the dispositional order for lack of jurisdiction, we need not address the petitioner parents' assignment of error relative to the merits of that order.

Vacated and remanded.